THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL MOORE, Defendant-Appellant.

First District (1st Division)   No. 1—90—1425

Opinion filed April 18, 1994.—Rehearing denied June 29, 1994.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and James Ryan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On August 4, 1986, defendant, Michael Moore, held a gun to Mary Ann Zawada's head and robbed her of the money in her cash register at a Dolton, Illinois, liquor store. Defendant received a 15-year sentence to be served consecutively to two other State sentences defendant is currently serving. He appeals. We affirm.

Defendant argues that his conviction must be reversed because the State failed to grant him a speedy trial as is required by constitutional and statutory law. The State replies that defendant has waived this claim because he failed to raise it in the circuit court and neglected to include it in his post-trial motion. Although defendant failed to argue this claim in the circuit court, we will address the issue on the merits because defendant contends on appeal that his failure to raise the issue was the result of the ineffectiveness of his trial counsel.

Both the Federal and the State Constitutions guarantee an accused the right to a speedy trial. (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; see *Klopfer v. North Carolina* (1967), 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988.) An additional, statutory right can also be found in section 103—5 of the Code of Criminal Procedure of 1963, which specifies periods of time within which an accused must be brought to trial. (Ill. Rev. Stat. 1987, ch. 38, par. 103—5.) Although the constitutional and statutory provisions address similar concerns, the rights established by them are not necessarily coextensive. (*People v. Richards* (1980), 81 Ill. 2d 454, 410 N.E.2d 833.) Section 103—5 provides, in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days

from the date he was taken into custody unless delay is occasioned by the defendant ***.

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***.

For purposes of computing the 160 day period under this subsection, every person who was in custody for an alleged offense and demanded trial and is subsequently released on bail or recognizance and demands trial, shall be given credit for time spent in custody following the making of the demand while in custody. Any demand for trial made under this provision shall be in writing; and in the case of a defendant not in custody, the demand for trial shall include the date of any prior demand made under this provision while the defendant was in custody." (Ill. Rev. Stat. 1991, ch. 38, pars. 103—5(a), (b).)

The supreme court has recognized that subsections (a) and (b) differ in several material respects. (*People v. Garrett* (1990), 136 Ill. 2d 318, 324, 555 N.E.2d 353.) The 120-day period of subsection (a) begins to run automatically when a defendant is taken into custody, and no demand for trial is necessary. (*People v. Garrett*, 136 Ill. 2d at 324.) On the other hand, a written demand for trial is required under subsection (b), and the period does not begin to run until that demand is made. (*People v. Garrett*, 136 Ill. 2d at 324.) Our courts have construed these provisions liberally, and each case must be decided on its own facts. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 106, 440 N.E.2d 872.) Any delay occasioned by the defendant will suspend, temporarily, for the time of the delay, the time period within which defendant must be tried. (*People v. Smith* (1991), 207 Ill. App. 3d 1072, 566 N.E.2d 797, *appeal denied* (1991), 139 Ill. 2d 603, 575 N.E.2d 921.) In computing the period of delay, the first day is excluded and the last day is included in the calculation. *People v. Grant* (1982), 104 Ill. App. 3d 183, 432 N.E.2d 1129.

■ Both defendant and the State use the 120-day term in analyzing whether defendant was tried in a timely fashion. However, in order to be discharged under the 120-day term, a defendant must have been in custody in connection with the charge for which he subsequently was tried. (*People v. Adams* (1982), 106 Ill. App. 3d 467, 470, 435 N.E.2d 1203, *appeal denied* (1982), 91 Ill. 2d 572.) In the present case, defendant spent little time in custody for the charges at issue here. The record indicates that defendant was arrested for the Zawada robbery on September 3, 1986. Three days later he was released on bond. While on bond, defendant was arrested on two unrelated armed robbery charges and again was released on bond. On December 4, 1986, defendant's bond was revoked in the Zawada case

due to his subsequent arrest. At the December 23, 1986, hearing on defendant's unsuccessful motion for reconsideration of the revocation, defendant, then in custody, demanded trial. On February 6, 1987, this court reversed the circuit court's bond ruling and ordered defendant to post an additional bond in the Zawada case. Defendant did so and was released from custody. In August 1987, defendant was arrested for the armed robbery of a fast-food restaurant. Defendant failed to post bond for that robbery and was taken into custody on those charges. On October 8, 1987, defendant pleaded guilty to all the unrelated armed robbery charges pending against him and was sentenced to consecutive prison terms of 18 and 10 years.[1] As the foregoing reveals, once this court reversed the circuit court's bond revocation, defendant was no longer in custody for the Zawada robbery. It was defendant's inability to post bond in the fast-food robbery which rendered him susceptible to incarceration on that charge until October 8, when he pleaded guilty to the unrelated robberies pending against him. For these reasons, the 120-day term is inapplicable to the issue presented here because defendant was not in custody for the Zawada robbery.

Additionally, both the State and defendant appear to agree that October 9, 1987, is the date from which any statutory term must be counted. Presumably, the parties have settled upon this date because they believe that defendant was in custody for the Zawada robbery as of that time. Actually, defendant's bond in the Zawada case was still in effect at that time. However, as noted above, defendant was in custody on October 9 pursuant to his conviction of and sentences for the three unrelated armed robberies. During the period in question, defendant was in various correctional centers throughout Illinois pursuant to those sentences. This fact is important. A person committed to the Department of Corrections with a charge pending against him in any county in the State is subject to the 160-day speedy trial period of section 103—5(b). (*People v. Garrett*, 136 Ill. 2d

---

[1]Prior to October 8, 1987, defendant had entered into an agreement concerning all of the robberies with which he was charged, including that of Mary Ann Zawada. Defendant agreed to plead guilty to the three unrelated robberies and was to receive concurrent sentences of 18 years and a consecutive sentence of 10 years. That sentence ultimately was imposed when defendant pleaded guilty on October 8. In exchange for his guilty plea in the Zawada robbery, defendant was to receive another 18-year sentence to be served concurrently with the 28-year sentence. However, the circuit court refused to accept defendant's plea because defendant refused to stipulate to the factual basis offered by the State. In fact, defendant maintained that he did not commit the Zawada robbery.

at 330.) In such a situation, section 3—8—10 of the Unified Code of Corrections governs, and the speedy trial term does not begin to run until defendant files a speedy trial demand. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—10; see also *People v. Garrett*, 136 Ill. 2d at 330; *People v. Freeland* (1981), 103 Ill. App. 3d 94, 430 N.E.2d 277.) Specifically, the provision provides, in part:

"Intrastate Detainers. Except for persons sentenced to death, subsection (b), (c), and (e) of Section 103—5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State, and such person shall include in the demand under subsection (b), a statement of the place of present commitment, the term, and length of the remaining term, the charges pending against him or her to be tried and the county of the charges, and the demand shall be addressed to the state's attorney of the county where he or she is charged with a copy to the clerk of that court and a copy to the chief administrative officer of the Department of Corrections institution or facility to which he or she is committed. The state's attorney shall then procure the presence of the defendant for trial in his county by habeas corpus. Additional time may be granted by the court for the process of bringing and serving an order of habeas corpus ad prosequendum. In the event that the person is not brought to trial within the allotted time, then the charge for which he or she has requested a speedy trial shall be dismissed." (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—10.)

Section 3—8—10 incorporates section 103—5(b)'s requirement that a speedy trial demand be made in writing. Accordingly, the statutory term begins to run on the date on which defendant files his demand. (*People v. Garrett*, 136 Ill. 2d at 330. See also *People v. Wentlent* (1982), 109 Ill. App. 3d 291, 440 N.E.2d 296.) No such demand was filed on October 9, 1987; therefore, that date cannot be used as the first date of the 160-day term. Moreover, defendant's in-custody, December 23, 1986, demand for trial cannot be construed as an effective demand under section 103—5(b). (See *People v. Garrett*, 136 Ill. 2d at 330 (no demand for trial is required under section 103—5(a); any such demand is premature and has no effect for purposes of section 103—5(b)).) Our review of the record indicates that defendant never filed a written demand for trial as the statute mandates. For this reason, the speedy trial statute was not violated.

We note that even if we were to accept defendant's 120-day argument, the statute was not violated. Thirty-eight days elapsed between October 9 and November 16, 1987, the date of the first contin-

uance which was set by agreement. An agreed continuance, made on the record, constitutes an affirmative act of delay attributable to a defendant and will suspend the speedy trial term. (*People v. Turner* (1989), 128 Ill. 2d 540, 553, 539 N.E.2d 1196, *cert. denied* (1989), 493 U.S. 939, 107 L. Ed. 2d 326, 110 S. Ct. 337.) Moreover, during the period between November 16 and February 4, 1988, defendant personally agreed to the continuances so that he could retain new counsel. The resulting delays must be attributed to him. (*People v. Grayson* (1988), 165 Ill. App. 3d 1038, 520 N.E.2d 901, *appeal denied* (1988), 121 Ill. 2d 576, 526 N.E.2d 835.) In fact, the trial judge admonished defendant during this time that he believed "game playing" was taking place in his courtroom with regard to stalling and that he would not have any part of it. On February 4, 1988, new counsel appeared before the circuit court and informed the judge that "some agreement" between her office and defendant was imminent. However, she could not begin working on defendant's case due to her participation in another matter before another judge. The circuit court accepted these representations and set defendant's case for February 8, 1988. The record further reveals that the next four continuances were agreed to by the parties. Accordingly, we will attribute the resulting delays to defendant. *People v. Turner*, 128 Ill. 2d at 553.

Defendant maintains that the delays occurring during April 1988 must be charged to the State because he could not meet with his counsel because he was incarcerated outside of Cook County. However, as noted above, defendant's "pretrial" incarceration was not due to the charges for which he was facing trial. Thus, we will not attribute the delay to the State. Moreover, we note that during this same period, defense counsel requested a continuance so that she could proceed on defendant's motion to vacate the guilty plea which resulted in defendant's incarceration. Such a delay is attributable to defendant because he is bound by the acts of his counsel. *People v. Bowman* (1990), 138 Ill. 2d 131, 561 N.E.2d 633.

Pursuant to the agreed continuance, the case was next called on June 21, 1988, when the parties informed the trial judge that defendant was in the custody of the United States Marshall due to his alleged involvement in a 1986 armed robbery of a postal clerk. Defense counsel further represented to the judge that the guilty plea vacation proceedings were still ongoing. In response, the prosecutor suggested an August trial date to which defense counsel agreed. Under these circumstances, we decline to attribute this delay to the State because defense counsel acquiesced to the delay on behalf of defendant. *People v. Bowman*, 138 Ill. 2d at 131.

At the next hearing, on August 4, the State informed the court that the Federal authorities would not release defendant to their custody because his State case was assigned to an "outlying" court. The State asked that the cause be transferred to the criminal courts building at 26th Street and California Avenue. The court issued the transfer and continued the case to August 11. On that date, defense counsel agreed to continue the case until September.

On September 13, 1988, the State moved for a continuance until September 21 because the Federal authorities still held defendant in custody. They also sought to transfer the case to 26th Street. Thus, we attribute this eight-day delay to the State. Defendant orally demanded trial at this time.

On September 21, the record shows that a continuance was entered by agreement of the parties. The next court proceeding was held on November 3, at which time the State moved for a continuance until November 9. This six-day delay is, of course, attributable to the State. Defendant, however, sought the next continuance to November 28.

On that date, counsel iterated defendant's demand for trial, but also informed the trial judge that defendant had "from time to time *** fired Mr. Adam (co-counsel) and myself with respect to his cases." Counsel also stated that there was a possibility that defendant was not mentally fit for trial. The trial judge noted that the State was ready to proceed, but that because defendant was in Federal custody and was being "evaluated in a psychiatric setting," he would extend the statutory term within which defendant must be tried. The court then continued the matter to December 1 on the State's motion. On that date, the State sought another seven-day continuance in order to secure defendant's release from Federal custody. Accordingly, this 10-day delay is attributable to the State.

At the hearing on December 7, defense counsel noted that she had been demanding trial in defendant's behalf; however, because of defendant's uncertainty as to whether he would retain her as counsel, she asked that defendant be heard on the matter. At that point, the trial judge asked defendant who his lawyer was. After consulting with his attorney, defendant, through his counsel, informed the judge that he was satisfied with his attorney, was not interested in entering a plea, and wished to set the case for a "two week status at which time we will set it for trial." As a result, the trial judge continued the case by agreement until December 21. Therefore, the record affirmatively establishes that defendant was satisfied with his counsel and agreed with her decision to continue the case. A defendant who does not promptly repudiate an attorney's act has effectively ratified

that act. (*People v. Bowman*, 138 Ill. 2d at 141.) By so acting, defendant expressly agreed to the ensuing delay.

The next 10 continuances were either by agreement or by motion of defendant. On August 24, 1989, defense counsel asked the court for additional time so that defendant could undergo a psychiatric examination. Such an examination tolls the statutory speedy trial term. (*People v. Clark* (1986), 148 Ill. App. 3d 669, 499 N.E.2d 701, *appeal denied* (1987), 113 Ill. 2d 578, 505 N.E.2d 356.) At the next hearing, the parties agreed to a November 14 trial date. The next three continuances were by agreement of the parties. The State then sought two continuances totaling 35 days. Defendant sought one continuance, and trial ultimately commenced on March 26, 1990.

All in all, the record reveals that defendant agreed to many, if not all, of the continuances of which he now complains. Only 86 days are directly attributable to the State: August 4 through August 11, 1988 (seven days); September 13 through September 21, 1988 (eight days); October 4 through October 13, 1988 (nine days); November 3 through December 7, 1988 (34 days); July 19, 1989, through July 20, 1989 (one day); January 24 through January 31, 1990 (seven days); and February 8 through February 28, 1990 (20 days). Thus, even if the 120-day term were applicable here, a large percentage of the delay is attributable to defendant. Under these circumstances, the State did not violate the speedy trial statute.

■ Defendant's arguments concerning his constitutional right to a speedy trial are no more persuasive when examined in light of the facts set forth above.

The United States Supreme Court has identified four factors to be used in evaluating a constitutional speedy trial claim. The factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. (*Barker v. Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 116-17, 92 S. Ct. 2182, 2192.) The Court further noted that it is essential to consider whether the government or the defendant is more to blame for the delay. (*Barker*, 407 U.S. at 531, 33 L. Ed. 2d at 117, 92 S. Ct. 2192.) Here, several years passed between defendant's initial arrest in this matter and the commencement of trial. However, as we have detailed, the majority of the delay between October 9, 1987, and the date of trial was attributable to defendant. Although the record contains three oral demands for a speedy trial, one in December 1986 and two in 1988, the record more than suggests that defendant's desire for a speedy trial was not as ardent as he now represents to this court. In this regard, we are aided by the trial judge's observations that defendant was "game playing" and stalling. Given these facts, our deter-

mination must rest upon the amount of prejudice the delay caused to defendant.

In the context of a speedy trial claim, we assess prejudice in light of the interests protected by the right to a speedy trial. (*Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193.) Such interests include the prevention of oppressive pretrial incarceration, the minimization of defendant's anxiety and concern about the pending charge, and the limitation of the possibility that the defense will be impaired by the delay. (*Barker*, 407 U.S. at 536, 33 L. Ed. 2d at 120, 92 S. Ct. at 2195.) Under the circumstances of this case, we do not consider defendant's pretrial incarceration "oppressive" because he was properly under sentence as a result of his spree of unrelated armed robberies. Defendant has presented this court with no facts from which we could find an oppressive, unjust use of State power.

Moreover, we cannot conclude that defendant suffered anxiety as to this charge when he was serving an 18-year sentence in the State penitentiary and faced another 10 years of imprisonment upon its completion. In addition, defendant was under a Federal sentence of 25 years, to be served concurrent to his State sentences.

Finally, defendant has not shown that his defense was impaired as a result of the delay. The delay in the present case was explainable and favored neither the State nor the defendant. Furthermore, the record indicates that it was not deliberately contrived to impair the defense and caused no demonstrable prejudice so as to deprive him of a speedy trial as guaranteed by the Constitution.

■ Defendant next contends that his counsel was ineffective for failing to move for a discharge on these grounds in the circuit court.

Generally, in order to establish ineffective assistance of counsel, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In adopting *Strickland*, our supreme court noted that a defendant bears a heavy burden to overcome the strong presumption in favor of a finding that defense counsel's advocacy was not ineffective. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Further, the determination of the reasonableness of trial counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of the circumstances. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

As the foregoing analyses regarding the speedy trial issue show,

trial counsel did not act unreasonably in failing to present a motion to discharge defendant on that basis. The record reveals that defendant was responsible for most of the delay, and the portions of it attributable to the State were negligible. "Defense counsel has no duty to advance specious claims of constitutional deprivation." (*People v. Gray* (1981), 95 Ill. App. 3d 879, 884, 420 N.E.2d 856.) Defendant, therefore, has failed to meet his burden in establishing that counsel's performance was ineffective.

■ Defendant contends that his 15-year consecutive sentence was improperly given.

Section 5—8—4 of the Unified Code of Corrections provides in pertinent part:

> "[W]hen a term of imprisonment is imposed on a defendant who is already subject to sentence in this State *** the sentences shall run concurrently or consecutively as determined by the Court. ***
>
> (b) The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court will set forth in the record." (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—4(a), (b).)

Defendant here complains that the trial court failed to provide a basis in the record for the consecutive sentence imposed.

Our supreme court has determined the requirement contained in section 5—8—4(b)—that the basis be set forth in the record—is permissive rather than mandatory and that waiver results if defendant failed to request a specific finding at the time of sentencing. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.) Here, defendant did not object to the imposition of the consecutive sentence and did not request a specific finding of the sentencing court relative to the protection of the public. Nor did defendant complain that a basis for the required statutory finding was not sufficiently articulated. That being the case, defendant's claim is waived. *People v. Hicks*, 101 Ill. 2d at 374; *People v. Abraham* (1993), 257 Ill. App. 3d 587, 600; *People v. Suarez* (1991), 238 Ill. App. 3d 110, 606 N.E.2d 589.

Defendant next insists that his sentence should be reduced because he was penalized for exercising his right to a trial.

Sentencing is discretionary with the circuit court and will not be changed upon review absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) The circuit court is presumed to have based the sentence on proper legal reasoning, and

reviewing courts, generally, are reluctant to reduce a sentence that is within the applicable statutory guidelines.

However, a sentence will be set aside if the sentencing judge's remarks evince that the imposed sentence resulted, at least in part, from the fact that defendant did not plead guilty and, instead, exercised his right to trial. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) Nevertheless, the mere imposition of a sentence greater than that discussed at a pretrial conference does not support the inference that the heavier sentence was imposed as punishment for demanding trial. *People v. Beacham* (1980), 87 Ill. App. 3d 457, 410 N.E.2d 87.

Initially, we note that defendant's sentence falls within the statutory range for armed robbery, a Class X felony. That range is not less than 6 and not more than 30 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) Furthermore, the State presented evidence of defendant's prior criminal conduct, which included previous convictions for theft and armed robbery, factors to be considered in aggravation.

As noted above, defendant had agreed to plead guilty to all four robberies with which he was charged. The agreement provided that defendant was to receive concurrent sentences of 18 years on two of the robberies and a consecutive sentence of 10 years on the other. In exchange for his guilty plea in the Zawada case, defendant was to receive an 18-year sentence to be served concurrently with the 28-year sentence received for the other three robberies. Defendant failed to plead guilty and ultimately demanded a trial.

The record of the sentencing hearing is devoid of any credible evidence that the trial judge was predisposed to impose a more severe sentence on defendant simply because of defendant's failure to plead guilty. In fact, the sentencing judge made no comment on the fact that defendant exercised his right to a trial. Furthermore, the sentencing judge did not participate in any plea negotiations and could not have known of defendant's prior arrangement. We decline to disturb the sentence imposed by the circuit court.

The judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.