2021 IL App (1st) 192307-U

No. 1-19-2307

Order filed August 20, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4237 |
| | ) | |
| KENNETH ANDERSON, | ) | Honorable |
| | ) | Ursula Walowski |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's summary dismissal of defendant's postconviction petition because his claim for ineffective assistance of counsel on direct appeal lacked merit and the circuit court did not improperly orally dismiss the petition.

¶ 2    Defendant Kenneth Anderson appeals from the dismissal of his *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (2018)), alleging that his petition set forth an arguable claim for ineffective assistance of counsel on direct appeal, and that the circuit court improperly dismissed his petition orally. We affirm.

¶ 3    Defendant was charged by information with five counts arising from an incident on March 6, 2016, including count I for vehicular invasion (720 ILCS 5/18-6(a) (West 2016)), count II for robbery, counts III and IV for aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West Supp. 2015)), and count V for unlawful restraint (720 ILCS 5/10-3(a) (West 2016)). Before trial, the State amended count II from robbery to attempt robbery (720 ILCS 5/18-1(a) (West 2016); 720 ILCS 5/8-4 (West 2016)).

¶ 4    During defendant's bench trial, Chicago police officer Eric James testified that on March 6, 2016, he and his partner were on patrol near the 600 block of North Ridgeway Avenue in Chicago when James looked out the passenger window and saw a man "halfway into the *** driver side window of a vehicle." James identified defendant as that man in court. As the police vehicle passed, James heard defendant say, "give me your money." James asked his partner to reverse and approach the vehicle, and as he did so, James observed defendant still in the window of the other vehicle. The officers activated their vehicle's emergency lights and "conducted an investigatory stop."

¶ 5    The officers instructed defendant to approach the police vehicle, and he complied. The officers then detained defendant and approached the other vehicle, where another man, Mario Lituma[1], sat in the front driver's seat. James observed that Mario was "distraught," and had a bloody lip and left eye laceration. James requested a translator because Mario only spoke Spanish, and Chicago police officer Saul Pacheco arrived and translated Mario's account of the incident. The officers then arrested defendant.

---

[1] Because Mario Lituma and his son Alex Lituma both testified at trial, we refer to them by their first names.

¶ 6     On cross-examination, James testified that the police vehicle was 15 to 20 feet away and traveling at "no more than five miles an hour" when he saw defendant lean into the window of Mario's vehicle and demand money. James did not search Mario's vehicle, recover narcotics from defendant's person, or see anyone strike someone else during the incident.

¶ 7     Pacheco testified that he arrived on the scene to translate for Mario. Defendant attempted to flee, but Pacheco ultimately transported him to the police station.

¶ 8     Mario testified that on March 6, 2016, he drove to a home on the 600 block of North Ridgeway to pick up his son, Alex Lituma. While Mario was parked outside, a woman approached and tapped on Mario's window. The woman asked for a dollar, then reached inside the window and lowered it completely, at which point a man appeared and said, "give me your money, your phone, your wallet, or I'm going to kill you." Mario identified defendant as that man in court. Defendant hit Mario on the left side of his face, which broke his dentures and caused an injury to his left eye. Eventually, the police arrived and the attack stopped.

¶ 9     On cross-examination, Mario testified that 10 minutes elapsed from the time the woman first approached until the police arrived. Mario denied selling anything to defendant or accepting money from him. When the police arrived, they searched Mario's vehicle.

¶ 10     Alex testified that on March 6, 2016, he was in his home, waiting for Mario, when he heard a vehicle's horn outside. Alex exited and saw "a man hitting" Mario in the head. He only saw the man's back. Additionally, he saw a woman on the passenger side of Mario's vehicle attempt to open the passenger-side door. Alex told the man and woman he would call the police, and he then returned inside after the woman approached him.

¶ 11    Defendant testified that he had multiple prior convictions, including for retail theft and burglary. On March 6, 2016, he was near the home on the 600 block of North Ridgeway with a woman named Maria to buy drugs from Mario, whom defendant knew as "Al Chopo." During the transaction, Maria asked Mario about his face, and Mario relayed he had been in a bar fight. Defendant gave Mario money, but before Mario could retrieve the drugs, police officers arrived and arrested defendant. Defendant never struck Mario in the face or attempted to take anything from him.

¶ 12    On cross-examination, defendant stated that he purchased drugs from Mario on two prior occasions. Following his arrest, the officers Mirandized defendant at the police station, and he answered their questions. He denied telling officers that he bought $25 worth of crack cocaine from Mario, discovered it was fake, and tried to recover his money.

¶ 13    In rebuttal, the State called Detective Patrick Staunton, who testified that he spoke to defendant at the police station after he was Mirandized. Defendant stated that he purchased crack cocaine from Mario, discovered it was fake, and attempted to retrieve his money. Mario struck defendant, who struck Mario in return. Defendant did not mention the name Al Chopo. On cross-examination, Staunton acknowledged that no one memorialized defendant's statement.

¶ 14    Following closing arguments, the court found defendant guilty on all counts. The court denied defendant's motion to reconsider or for a new trial.

¶ 15    Defendant's presentence investigation (PSI) report showed that he was 56 years old at the time of arrest. He had 12 prior convictions, including aggravated assault in 1979; disorderly conduct in 1981; robbery in 1983 and 1990; burglary in 1990, 1995, and 2005; criminal trespass to a vehicle in 1994; receipt of stolen goods in 1995; retail theft in 2009; and theft in 1981 and

2014. He reported a "great" childhood, but was expelled from high school. He worked when not incarcerated, reported previous membership in the Vice Lords gang, and had 17 children. He was diagnosed with "PTS" in 2001, and reported previously considering suicide and an extensive history of substance abuse dating to childhood.

¶ 16    At sentencing, the State relayed that defendant was subject to a Class X term based on multiple prior Class 2 felony convictions, including robbery in 1990 and three burglaries from 1990, 1994, and 1995. The State emphasized the injuries Mario suffered, and argued defendant was a "career thief" who "definitely need[s] to be off the street for some time."

¶ 17    In mitigation, defense counsel argued that defendant worked when not incarcerated, suffered from untreated substance abuse issues which may have led to his criminal conduct in this incident, and had dependent children. In allocution, defendant stated, "Not guilty. I didn't do s***."

¶ 18    The court imposed concurrent sentences of 12 years' imprisonment on count I for vehicular invasion, an extended term of 8 years' imprisonment on count II for attempt robbery, and 5 years' imprisonment for count III for aggravated battery in a public place. In so finding, the court stated that it considered the evidence in aggravation and mitigation and the statutory sentencing factors. The court merged count IV into count III and count V into count II. Defendant did not file a motion to reconsider sentence.

¶ 19    Defendant appealed, arguing that the extended-term sentence for attempt robbery was improper. This court reduced his attempt robbery sentence to five years' imprisonment, corrected the mittimus and certain fines and fees, and otherwise affirmed. *People v. Anderson*, 2019 IL App (1st) 170025-U.

¶ 20    On August 7, 2019, defendant filed his *pro se* postconviction petition, in which he alleged, in relevant part, that appellate counsel was ineffective for not raising an excessive sentence claim on direct appeal.

¶ 21    On September 27, 2019, the circuit court summarily dismissed the petition, stating in open court that it was "frivolous" and lacked "any merit." The court recorded the decision on a criminal disposition sheet, noted it in a docket entry for that date, and notified defendant of its decision, but did not issue an order detailing its findings of fact or conclusions of law.

¶ 22    On appeal, defendant first argues that the circuit court erred by summarily dismissing his postconviction petition because it set forth an arguable claim for ineffective assistance of counsel on direct appeal for not challenging his sentence.

¶ 23    The Act provides a mechanism for criminal defendants to challenge their convictions based on constitutional violations. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A petition brought pursuant to the Act proceeds in three stages. *People v. Custer*, 2019 IL 123339, ¶ 29. At the first stage, the defendant need only present the "gist" of a constitutional claim. *Id.* To show the gist of a claim, the defendant must allege sufficient facts to arguably raise a constitutional violation. See *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Where the petition fails to set out the gist of a constitutional claim, the circuit court should dismiss it as frivolous or patently without merit. 725 ILCS 5/122-2.1 (West 2018). We review a circuit court's summary dismissal of a postconviction petition at the first stage *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 24    A criminal defendant has the right to effective assistance on direct appeal. *People v. Ross*, 229 Ill. 2d 255, 269 (2008). To establish a claim for ineffective assistance on direct appeal, a defendant must demonstrate that appellate counsel engaged in deficient conduct, and that this

conduct prejudiced the defendant. *Hodges*, 234 Ill. 2d at 17. At the first stage of postconviction proceedings, the defendant need only allege sufficient facts to show arguably deficient conduct and arguable prejudice. *Id.* The defendant must demonstrate both prongs, and if a defendant cannot establish one prong, the court may deny the claim on that basis alone. *People v. Williams*, 2020 IL App (1st) 162512, ¶ 83. Where a defendant alleges ineffective assistance of counsel for failure to make a certain claim on direct appeal, the reviewing court must analyze the underlying claim to determine if it is meritorious. *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Appellate counsel need not raise any conceivable claim on direct appeal, and cannot be found ineffective for failing to raise a non-meritorious issue. *People v. Wesley*, 2019 IL App (1st) 170442, ¶ 20.

¶ 25     Defendant's underlying claim here is that his 12-year sentence for unlawful vehicular invasion was excessive. A sentencing court has broad discretion in imposing sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). Under the Illinois Constitution, a court must consider the seriousness of the offense and the defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11. The sentencing court need not weigh a defendant's mitigating factors above the seriousness of the offense. *People v. Weatherspoon*, 394 Ill. App. 3d 839, 862 (2009). Additionally, the court will be presumed to have considered all relevant factors absent a showing from the record to the contrary. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 9. A reviewing court should not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently. *Id.* ¶ 8. Sentencing decisions are reviewed for abuse of discretion, and a sentence that is within the sentencing range should not be set aside unless it is manifestly disproportionate to the offense or greatly at variance with the spirit of the law. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 72.

¶ 26 Here, defendant's PSI report showed 12 prior convictions, including for aggravated assault, multiple thefts, multiple robberies, multiple burglaries, retail theft, and receipt of stolen property. He reported mental health and substance abuse issues, as well as previous work history when not incarcerated. He also reported prior gang membership and having 17 children. At sentencing, defense counsel referenced defendant's previous employment, substance abuse issues, and children, and requested a lighter sentence. The court imposed 12 years' incarceration, which was within the 6-to-30-year Class X sentencing range to which defendant was subject. See 730 ILCS 5/5-4.5-25 (West 2016). The court stated that it considered the evidence in aggravation and mitigation, and the appropriate statutory factors.

¶ 27 On this record, we find that defendant's underlying claim for excessive sentence lacked merit. The sentence was within the applicable range, and thus presumptively proper. *People v. Guerrero*, 2020 IL App (1st) 172156, ¶ 52. Accordingly, defendant would have had to demonstrate that the sentence was manifestly disproportionate to the crime or greatly at variance with the spirit of the law. Defendant could not have made this showing. First, his sentence was not manifestly disproportionate to his conduct because his crimes of vehicular invasion, attempt robbery, and aggravated assault all constitute serious conduct which posed a danger to the public. Indeed, defendant's conduct caused bodily harm to Mario, which may have been worse had the officers not arrived when they did. Additionally, the 12-year sentence was not greatly at variance with the spirit of the law, as it was towards the lower end of the applicable sentencing range. While defendant argues that his past crimes might have reflected his drug abuse, his criminal history apart from his Class X qualifying convictions demonstrated substantial recidivism. This record made it

perfectly reasonable for a sentencing court to conclude a minimum term would be insufficient to protect the public. See 730 ILCS 5/5-5-3.2 (West Supp. 2015).

¶ 28 Defendant maintains that it is at least arguable that the sentencing court did not appropriately weigh his mitigating factors, but this argument ignores the standard of review in excessive sentencing matters. The reviewing court may not reweigh the sentencing factors, and must presume that the sentencing court considered all relevant factors unless the defendant makes an affirmative showing from the record to the contrary. See *Brown*, 2018 IL App (1st) 160924, ¶¶ 8-9. A reviewing court should not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently. *Id.* ¶ 8. Here, the trial court stated it considered all relevant factors and defendant identifies nothing in the record to the contrary. Defendant's argument amounts to a request that the reviewing court substitute its judgment for that of the sentencing court and reweigh the sentencing factors in defendant's favor, and it is well-established that a reviewing court may not do so. *Id.*

¶ 29 Because defendant's underlying excessive sentence claim lacks merit, his postconviction petition did not allege sufficient facts to demonstrate arguable prejudice from alleged ineffective assistance of counsel on direct appeal, and his claim fails.

¶ 30 Defendant next argues that the circuit court erred by orally dismissing his petition without issuing a written order containing its findings of fact and conclusions of law.

¶ 31 Pursuant to the Act, when the circuit court summarily dismisses a postconviction petition, the court "shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision" within 90 days of the petition's filing and docketing. 725 ILCS 5/122-2.1(a)(2) (West 2018). The Illinois Supreme Court has ruled that the

written order provision is directory, however, and the only mandatory act the circuit court must undertake is to enter the dismissal of record within 90 days. *People v. Porter*, 122 Ill. 2d 64, 81 (1988). As stated above, we review the summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 32 Here, the record shows that the circuit court entered its dismissal of record in a criminal disposition sheet and on the docket within 90 days of the petition's filing and docketing. Thus, the circuit court satisfied the requirements as established by statute and the supreme court, and defendant's claims fails. *People v. Cooper*, 2015 IL App (1st) 132971, ¶ 14.

¶ 33 Defendant argues that the supreme court implicitly overruled *Porter* in *People v. Perez*, 2014 IL 115927. There, the circuit court failed to enter any dismissal of record within 90 days of the petition's filing and docketing, and instead filed its written dismissal order on the 91st day. *Id.* ¶ 1. The supreme court ruled this did not satisfy the statutory requirements. *Id.* The *Perez* court clarified, however, that its order only concerned the question of "when did the trial court 'enter an order' pursuant to the statute." The *Perez* order does not discuss the written order requirement rule as established in *Porter*; indeed, the *Perez* order does not cite, comment on, or even reference *Porter*. *Id.* ¶ 13. Under these circumstances, we cannot say that *Perez* implicitly overturned *Porter*.

¶ 34 For these reasons, we affirm the circuit court's summary dismissal of defendant's postconviction petition.

¶ 35 Affirmed.