THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP LOVE *et al.*, Defendants-Appellants.

First District (1st Division)   No. 83—295

Opinion filed December 9, 1985.

Richard E. Gorman, of Chicago, for appellant Phillip Love.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant Joseph Walker.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Karyn Stratton, and Brian S. Crowley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendants Joseph Walker and Phillip Love were found guilty of two counts of armed robbery and one count of aggravated battery. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2, 12—4.) Both defendants were sentenced to serve 17 years in prison for the armed robberies and five years for the aggravated battery, the sentences to run concurrently. The appeals of Walker and Love have been consolidated by this court.

On appeal, Walker argues: (1) his prosecution for one count of armed robbery by information was improper; (2) he was denied his right to due process where the State failed to inform him that two codefendants had made judicial confessions that exculpated him; (3) the identification of him as one of the offenders was so inherently suspect as to require reversal; and (4) his sentence is excessive. Love raises the following arguments: (1) the trial judge erred when, after accepting his guilty plea and sentencing him, he allowed the withdrawal of the plea and did not recuse himself; (2) the court permitted him to represent himself without admonishing him in accordance with Supreme Court Rule 401 (87 Ill. 2d R. 401); (3) he was deprived of a fair trial by being allowed to represent himself *pro se*; (4) the prosecutor's remarks during closing argument were reversible error; and (5) his sentence is excessive. For the following reasons, we reverse and remand the conviction of Walker, and affirm the conviction and modify the sentence of Love.

Testifying for the State at trial was Raphael Perez, who stated that at approximately 4 a.m. on February 20, 1982, he was with a group of people in a club at 1350 West 51st Street in Chicago. At that time, defendants Love, Walker and a third man named Jerry Rodriguez entered the club and announced a holdup. Walker, who was masked, took a gun from Rodriguez and ordered everyone in the club to lie down. Perez refused to do so, and Love struck him on the forehead with a pool cue and took a watch and chain from him. Walker,

Love and Rodriguez proceeded to rob everyone in the club and then left. The following day, Perez identified Love from a lineup as the man who struck him with the pool cue and also identified the watch that had been taken from him.

On cross-examination, Perez testified that Walker wore a ski mask over his face while he was inside the club, but that when Walker first entered the club he was wearing the mask only as a hat. Additionally, prior to leaving the club, Walker took off the ski mask, allowing Perez to again see his face.

Celso Medina, the club's owner, testified that he was at the club at the time of the robbery. Rodriguez, who was the first to enter, held a gun to Medina's head. Rodriguez was followed by an individual whom Medina identified in court as Love. Medina stated that behind Love was a third man who wore a mask on top of his head as he entered the club, but that he pulled the mask down over his face during the commission of the robbery. The masked man took the gun from Rodriguez and told everyone to lie down. When Raphael Perez refused to do so, Love struck Perez with a pool cue. The three men then robbed everyone and left the club. The masked man raised his mask as he left. Later that day, Medina identified Rodriguez and Love from police photographs as two of the robbers. He later viewed two lineups and again identified Rodriguez and Love. He was not certain about the third man, but stated at the lineup that Walker was wearing clothes similar to those which had been worn by the masked man.

Carlos Rivera testified he was also present in the club during the robbery. He identified two of the robbers as Love, whom he knew as "Little Joe," and Rodriguez, whom he knew as "Duck." He stated that one of the robbers wore a mask during the robbery, but did not wear the mask over his face as he entered the club. The man with the mask held a gun while Love hit Perez with a pool cue. Love then took Rivera's rings and gold chain. Rivera testified that the following day he saw two lineups and identified Rodriguez, Love and Walker as the robbers. After the lineups, Rivera was shown some jewelry and identified one of his chains. Rivera stated on cross-examination that prior to this incident he had seen Walker in the neighborhood on numerous occasions and knew him as "Joe." He admitted he was not sure that the masked man was Joe.

The last witness called by the State was Chicago police officer Daniel Mallon, who stated that the victims identified Love and Rodriguez individually from photographs as two of the robbers. Officer Mallon then proceeded to 71st Street and South Shore Avenue where he spotted Love, chased him on foot and eventually apprehended him. A

search of Love revealed a watch which was later identified by Raphael Perez. Further investigation of the area resulted in the arrest of Rodriguez, who was sighted at or near 7111 South Shore Avenue standing with a man matching the description of the third person involved in the robbery. This third suspect was Walker. At the time of the arrest, Walker had in his possession a gold chain which was later identified by Carlos Rivera as having been stolen from him during the robbery.

Chicago Police Detective James Doyle was called as a witness by Walker. Doyle testified he conducted the lineup containing Walker and that Perez was the only victim that identified Walker as a participant in the robbery. On cross-examination by the State, Doyle stated that Carlos Rivera said Walker looked like the third man, but could not make a positive identification.

Walker also called as a witness Anthony Coria, who testified he was present during the robbery. He stated that the man who wore a mask during the robbery never removed it. Coria was shown a group of police photographs at trial, but could not positively identify anyone.

I

We first address Walker's arguments that the prosecution of him by information for the armed robbery of Carlos Rivera was improper because there was a finding of no probable cause at the preliminary hearing.

In Illinois all prosecutions of felonies shall be by information or indictment. (Ill. Rev. Stat. 1983, ch. 38, par. 111—2.) A finding of no probable cause at a preliminary hearing does not bar subsequent indictment. (*People v. Wirth* (1979), 77 Ill. App. 3d 253, 395 N.E.2d 1106.) Here, the record reveals that after the finding of no probable cause as to Walker at the preliminary hearing, the State went before the grand jury and obtained a multiple count indictment against Walker. However, prior to trial, the State informed the court that the indictment in the court file failed to contain a count charging Walker with the armed robbery of Carlos Rivera. The State asserted that the absence of the count was due to a clerical error and offered to reindict on the missing count. The court suggested, in the interest of expediency that, if there was no objection by Walker, the State should file a single-part information and consolidate it with the indictment. The court asked Walker's attorney if he objected to the filing of the information and he responded no. The court then asked Walker's attorney if he had any objection to consolidating the information with the pending indictment, to which he responded, "No objection." At no

time during trial did Walker make any objection to the filing of the information. Nor did he raise the issue in his post-trial motion.

■ Section 111—2(a) of the Code of Criminal Procedure of 1963 provides that "[n]o prosecution may be pursued by information unless a preliminary hearing has been held or waived." (Ill. Rev. Stat. 1983, ch. 38, par. 111—2(a).) Given the circumstances set forth above, we find that Walker has waived a preliminary hearing and any objection to the filing of the information.

## II

Walker next contends that his conviction must be reversed because the State failed to inform him of statements made by his two codefendants which exculpated him. We agree. Walker and his codefendants Phillip Love and Jerry Rodriguez were charged with armed robbery and aggravated battery. Prior to trial, on July 21, 1982, Love and Rodriguez sought a plea conference with the court. Walker's attorney accepted the invitation to be present, but did not accept whatever offer was made by the State. Instead, Walker's attorney obtained a continuance. The case was then passed for 45 minutes. When the case was recalled, it was called only as to Rodriguez and Love. During the plea conference, the court asked Love and Rodriguez if the factual basis recited by the State was accurate, and the following colloquy occurred:

"THE COURT: Is that about the way it happened? Did you commit this armed robbery, these stick-ups with Mr. Walker and Mr. Love?

MR. RODRIGUEZ: I think your Honor, like it was only me and him and—I committed them, you know.

THE COURT: You mean it was only you and him?

MR. LOVE: He is indicating that Joseph Walker had no part in this robbery. Me and Rodriguez was the only defendants involved.

THE COURT: There's no third man?

MR. LOVE: No, it wasn't none at all.

THE COURT: Just two people?

MR. RODRIGUEZ: No.

THE COURT: That's what you're also saying?

MR. LOVE: That's what I'm saying. Joseph Walker was just standing on the bus stop and he was trying to sell Joseph Walker the gold medallion. Joseph Walker was examining it, the medallion.

THE COURT: Just trying to sell something to Joseph

Walker?

MR. RODRIGUEZ: Yes, sir.

THE COURT: Okay. You were part of this armed robbery, stick-up yourself, Mr. Love?

MR. LOVE: Yes, I was."

The court then found that a sufficient factual basis existed for accepting the pleas and entered judgment on the findings. At that point, the following dialogue took place:

"MR. REHLING [assistant State's Attorney]: Since we're in effect stipulating to certain findings, are both defendants saying the armed robbery was only two men. Performed by two men?

THE COURT: That's what they both told me.

MR. LOVE: Yes, it is.

MR. RODRIGUEZ: Yes.

THE COURT: That's what you're saying to me, Mr. Rodriguez?

MR. RODRIGUEZ: Yes.

THE COURT: That's what you're saying, Mr. Love?

MR. LOVE: Yes, I am."

Hence, both Rodriguez and Love made it clear to the court that Walker was not a participant in the robbery. Their statements were made in the presence of one of the prosecutors who represented the State at Walker's subsequent trial. There is nothing in the record indicating that Walker's attorney was informed of the fact that Rodriguez and Love had made confessions exculpating his client. The fact that no attempt was made by Walker to call either Love or Rodriguez as witnesses supports the conclusion that Walker's attorney had no knowledge of the exculpatory statements.

■ The right of an accused to be informed of exculpatory evidence is guaranteed both under the Federal constitution (see *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194) and by Illinois Supreme Court Rule 412(c) (87 Ill. 2d 412(c)). In *Brady*, the Supreme Court held that a violation of due process occurs when the State, regardless of motive, suppresses evidence material to the question of the accused's guilt or innocence after there has been a specific request for its production. Subsequent to *Brady*, the Supreme Court dealt with the instance of where the material being withheld was not specifically requested, but where there had been only a general request or no request for exculpatory material. (*United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) In *Agurs*, the court recognized that "there are situations in which evidence is obvi-

ously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." (427 U.S. 97, 110, 49 L. Ed. 2d 342, 353-54, 96 S. Ct. 2392, 2401.) In such situations, however, the disclosure obligation is limited to evidence which is either "obviously exculpatory" (427 U.S. 97, 107, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399) or "highly probative of innocence" (427 U.S. 97, 110, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400). See also *In re Hatfield* (1979), 72 Ill. App. 3d 249, 260, 390 N.E.2d 453 fn. 2.

The case before us does not involve a specific request for information and thus the standard in *Agurs* applies. Clearly, this standard was satisfied here. The confessions of Love and Rodriguez completely exculpated Walker and were obviously highly probative of Walker's innocence. The failure of the State to fulfill its obligation to inform Walker of his codefendants' statements violated his constitutional right to due process of law. Accordingly, Walker's conviction is reversed and the cause as to him is remanded for a new trial.

Given our disposition, we find it unnecessary to address Walker's remaining allegations. We note, however, that we believe the evidence at trial was sufficient for the trier of fact to conclude that Walker was guilty beyond a reasonable doubt. This does not mean we are making a finding as to Walker's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting Walker to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.

### III

We next turn to the arguments raised by defendant Love. First, he contends that the trial judge erred in failing to recuse himself after he withdrew his guilty plea, thereby violating Supreme Court Rule 402(d)(2) (87 Ill. 2d R. 402(d)(2).) This rule provides, in relevant part, as follows:

"If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time he may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he will concur in the proposed disposition; and if he has not yet re-

ceived evidence in aggravation or mitigation, he may indicate that his concurrence is conditional on that evidence being consistent with the representations made to him. If he has indicated his concurrence or conditional concurrence, he shall so state in open court at the time the agreement is stated as required by paragraph (b) of this rule. If the defendant thereupon pleads guilty, but the trial judge later withdraws his concurrence or conditional concurrence, he shall so advise the parties and then call upon the defendant either to affirm or to withdraw his plea of guilty. If the defendant thereupon withdraws his plea, the trial judge shall recuse himself."

Hence, under the above rule, if the judge withdraws his concurrence in the plea agreement, he shall advise the parties and call upon the defendant to affirm or withdraw his plea. Then, if the defendant withdraws his plea, the judge shall recuse himself. The circumstances in the present case differ significantly. Here, Love pleaded guilty, was found guilty and sentenced. The trial judge did not withdraw his concurrence prior to sentencing. Rather, Love, on his own initiative, moved the court to vacate his guilty plea. Supreme Court Rule 402(d)(2) does not require the trial judge to recuse himself after a defendant initiates the move to vacate his guilty plea. As such, that rule is inapplicable to this case.

## IV

■ Defendant Love further urges that the court permitted him to represent himself without fully complying with the provisions of Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)). This rule requires that defendants be advised by the trial court of the nature of the charge against them, the minimum and maximum sentence and their right to counsel.

In the present case, Love expressed his desire to proceed *pro se*, but did not object to the court appointing the public defender's office to assist him at trial in an advisory role. Love, in fact, requested that the assistant public defenders assigned to that particular courtroom be appointed to assist him in his defense. When "a defendant requests that he be allowed to conduct his own defense with the assistance of a court-appointed lawyer, he does not waive the right to counsel." (*People v. Pittman* (1979), 75 Ill. App. 3d 683, 687, 394 N.E.2d 702.) In such situations, the admonitions of Rule 401(a) are not required to be given because the defendant has not made a waiver of counsel within the meaning of the rule. (75 Ill. App. 3d 683, 687, 394 N.E.2d 702.) Hence, it was not necessary to admonish Love in accordance with

Rule 401(a).

■ Alternatively, even if we decide that Rule 401 should have been complied with, our result remains unchanged. The purpose of the rule is to " 'eliminate any doubt that the defendant understands the charge against him and its consequences, and to preclude a defendant from entering a plea of guilty or waiving the right to counsel without full knowledge and understanding.' " (*People v. Pittman* (1979), 75 Ill. App. 3d 683, 688, 394 N.E.2d 702.) Here, the record reveals that defendant fully understood the charges and penalties at the time he indicated his desire to act as his own counsel. The trial court not once, but twice, informed Love of the nature of the charges against him and the possible sentences involved if he was found guilty. Additionally, Love certainly knew of his right to counsel. The public defender's office had been appointed to represent him at his plea of guilty. Love, however, made the decision not be represented by an assistant public defender. He in fact dismissed two attorneys appointed to represent him. Under these circumstances, we find no violation of Rule 401(a).

V

Love argues next that he was deprived of his right to a fair trial by being permitted to defend himself *pro se*. Specifically, Love urges he was prejudiced during jury selection by waiving his right to have a court reporter present. He also complaints about his ineptness in cross-examination.

■ A defendant has the right to waive counsel and conduct his own defense. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.) " 'A defendant who knowingly and voluntarily waives his right to counsel cannot be heard to complain that his *pro se* representation prevented him from receiving effective representation of counsel or a fair trial.' " (*People v. Smith* (1982), 111 Ill. App. 3d 494, 499, 444 N.E.2d 565.) In this regard, the choice of a defendant must be honored even though he conducted his defense ultimately to his own detriment. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.) Accordingly, Love cannot now be heard to complain that his *pro se* representation denied him a fair trial.

VI

Love further argues that the cumulative impact of improper statements by the prosecutor during closing argument denied him a fair trial. Specifically, he objects to the following:

"I will just comment, to take notice he has two Public Defenders representing him today, he has had a chance to ask questions of them and of us. We tried to cooperate with the guy as much as we could. We wanted to give him a fair trial. That is Judge Schreier's job. He has gotten a fair trial in this case.

Don't feel sorry for Mr. Love as if the system is against him. If you want to feel sorry for someone, feel sorry for those three guys who had to come down here and go through this."

Love also urges that the prosecutor improperly commented on the failure of the defense to call witnesses when he stated:

"Now why didn't we bring in 25 people? I am glad they called Mr. Tony Coria today because he showed you why we didn't bring them in. Only three guys who had a good opportunity to observe. Mr. Coria was like everybody else. He came in and said, I don't know if those are the guys or not. That could be them, it might not be them. And that's what all the rest of the guys would say.

\* \* \*

They brought in a witness today. If there is a witness out there that could say they aren't the guys, you know they would have them here."

■■■ A prosecutor is permitted great latitude in his closing argument and the trial court's determination of the propriety of closing argument will generally be followed absent a clear abuse of discretion. (*People v. Hine* (1980), 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017.) Furthermore, a defendant cannot complaint that he has been prejudiced by any remarks of the prosecutor which have been invited or provoked by defense counsel. (*People v. Galloway* (1979), 74 Ill. App. 3d 624, 628, 393 N.E.2d 608.) Whether prosecutorial remarks deny the accused a fair trial and require reversal is dependent upon whether the result might have been otherwise had the remarks not been made. *People v. McKnight* (1979), 72 Ill. App. 3d 136, 145, 390 N.E.2d 379.

Here, the record discloses that the portions of the prosecutor's closing argument to which Love now complains were invited by and in direct response to the closing argument made on behalf of Love. During his closing argument, Love told the jurors that he represented himself because he believed that only he could bring out the truth at trial. Love further told the jurors that they did not get the best evidence in this case because he was a man of limited education and not well versed in public speaking or on cross-examination. Love's argument served no other purpose than to play on the sympathy of the

jury. In rebuttal, the prosecutor merely responded to the comments by telling the jury to decide the case on the evidence presented and not on the basis of sympathy for defendant.

Furthermore, it was also Love's closing argument which invited the prosecutor's reply with regard to the failure of the defense to call certain witnesses. During his closing argument, Love stated there were 20 other people at the club on the night of the incident who did not testify. Love argued it would be unfair to allow only 3 of 23 victims to convict him. Consequently, the prosecutor in rebuttal responded to Love's argument by explaining that only three men had a good opportunity to view the offenders.

■■■ We conclude that since all of the comments objected to were invited by Love's own closing argument, no prejudicial error occurred.

## VII

■■■ Love's final contention is that the trial court erred in sentencing him. The record shows that after Love initially pleaded guilty, the trial judge accepted his plea and sentenced him to five years on the one aggravated battery count and eight years on the 10 armed robbery counts, the sentences to run concurrently for a total of eight years. Love then withdrew his guilty plea and demanded a jury trial. Prior to the commencement of trial, the State dropped eight of the armed robbery counts against Love. Love was then found guilty of the remaining counts by a jury and sentenced to five years for the aggravated battery and 17 years for the armed robberies, the sentences to run concurrently for a total of 17 years. Hence, Love's total sentence was more than doubled after he exercised his right to a jury trial.

Love contends that the harsher sentence violated his constitutional right to due process of law. We agree. The rule with regard to the enhancement of a defendant's sentence upon retrial was set forth by the United States Supreme Court in *North Carolina v. Pearce* (1969), 395 U.S. 711, 725-26, 23 L. Ed. 2d 656, 669-70, 89 S. Ct. 2072, 2080-81. There, the Court stated:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension or such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. *Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."* (Emphasis added.)

The rule in *Pearce* was followed in *People v. Baze* (1969), 43 Ill. 2d 298, 253 N.E.2d 392. In *Baze*, as in this case, the defendant initially pleaded guilty. He was sentenced to a term of not less than two nor more than 10 years. That sentence was set aside when the trial court allowed the defendant's motion to quash the indictment. After reindictment for the same offense, the cause was tried and the defendant was sentenced to not less than six nor more than 15 years. On review, our supreme court found that the increased sentence violated the defendant's right to due process and reduced the sentence, reasoning as follows:

"Applying the *Pearce* rule to this case it would appear that evidence of defendant's prior convictions prompted the court, on retrial, to increase the sentence. That evidence was known at the time of the original sentencing, since the court docket recites that on defendant's original sentence was heard in regard to aggravation and mitigation. However, regardless of whether such convictions were initially known, or whether they came to light on retrial when the court heard only evidence in aggravation, those convictions involved conduct of defendant occurring *prior* to the original sentencing. Such conduct could not be the basis for imposing a heavier sentence on retrial under the *Pearce* rule." (Emphasis in original.) (43 Ill. 2d 298, 302.)

The court in *Baze* concluded that absent an affirmative showing of identifiable conduct on the part of the defendant occurring *after* the original sentencing, the imposition of the heavier sentence on retrial violated the defendant's constitutional right to due process of law. 43 Ill. 2d 298, 303.

In the present case, there is no showing, nor even any suggestion, that the more severe sentence was based on conduct occurring after the original sentence had been imposed. To the contrary, the armed robbery charges against Love had been reduced and the court stated, with regard to Love:

"During the trial he was respectful. He was no problem at all. He conducted himself as a gentleman and better than most

lawyers. So his conduct during the trial was certainly not such as to penalize him *** ."

Based on the record before us, we conclude that the imposition of the heavier sentence served no purpose other than to penalize Love for choosing to exercise his constitutional right to a jury trial and thus violated his right to due process. Consequently, we hereby reduce his sentence to the original sentence of five years for the aggravated battery and eight years for the armed robberies, the sentences to run concurrently.

For the foregoing reasons, the judgment of the circuit court of Cook County as to defendant Walker is reversed and remanded, and the judgment as to defendant Love is affirmed in part and reversed in part.

Judgment reversed and remanded as to defendant Walker. Conviction affirmed, and sentence modified as to defendant Love.

O'CONNOR and QUINLAN, JJ., concur.