# Illinois Official Reports

## Appellate Court

*People v. Means*, 2017 IL App (1st) 142613

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STACEY MEANS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-2613 |
| Filed | February 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-18213; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Affirmed; fines, fees, and costs order corrected. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, Benjamin A. Wolowski, and Elena B. Penick, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Whitney L. Bond, and Aaron R. Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Stacey Means was found guilty of the Class 2 felony of delivery of less than one gram of heroin. Means was sentenced to an extended term of nine years' imprisonment and two years of mandatory supervised release. On appeal, Means maintains that his sentence is excessive in light of the nature of the offense, his nonviolent criminal background, his history of substance abuse, and the financial impact of his incarceration on taxpayers. Means also contends that the $2000 controlled substance fine assessed against him should have been $1000 because he was convicted of a Class 2, not a Class 1 felony. We affirm Means's sentence and order the clerk of the circuit court of Cook County to correct the order assessing fines, fees, and costs to reflect a $1000 controlled substance fine.

¶ 2    Means was charged with one count of delivery of less than one gram of heroin within 1000 feet of a school (720 ILCS 570/407(b)(2), 401(d) (West 2012)) and one count of delivery of less than one gram of heroin (720 ILCS 570/401(d) (West 2012)). The state dismissed the charge involving delivery within 1000 feet of a school before trial.

¶ 3    On August 27, 2013, Chicago police officer Nester DeJesus was assigned to the narcotics division as a "buy officer." He was dressed in plain clothes and drove an unmarked vehicle in the in the vicinity of 701 N. Trumbull in Chicago. When he engaged a group of males at that location and inquired about trying to purchase heroin, Means responded and told him to pull over. Once Officer DeJesus exited the vehicle, Means handed him two ziplock bags with suspect heroin. Officer DeJesus gave Means $20 worth of prerecorded 1505 funds and then returned to the vehicle. After driving away from the area, Officer DeJesus informed his team about the narcotics transaction over police radio, indicated Means's last known location, and described his attire. After the enforcement officers detained Means, Officer DeJesus returned to the area and identified Means as the individual with whom he had engaged in the hand-to-hand transaction approximately five minutes earlier. Officer DeJesus maintained custody of the ziplock bags Means gave him until he inventoried them. The prerecorded funds were not recovered from Means. Surveillance and enforcement officers corroborated officer DeJesus's testimony.

¶ 4    The parties stipulated that the ziplock bags inventoried by Officer DeJesus contained 0.5 grams of heroin and that the proper chain of custody was maintained at all times.

¶ 5    The trial court found Means guilty of delivery of less than one gram of heroin. Means's motion for a new trial was denied.

¶ 6    The extended sentencing range for the Class 2 felony of delivery of less than one gram of heroin where the defendant has been convicted of the same or similar class felony within the previous 10 years is 7 to 14 years. 730 ILCS 5/5-4.5-35(a), 5-5-3.2(b)(1) (West 2012). At sentencing, the State argued in aggravation that Means's criminal history included five prior drug-related convictions. Specifically, in 2008, Means received two years' probation for possession of a controlled substance (PCS). In 2010, Means was sentenced to one year in the Illinois Department of Corrections for PCS, and later that year, he was sentenced in a separate case to two years' probation for a Class 2 drug-related felony. In 2011, Means was again found guilty of PCS and received a sentence of 17 months' imprisonment. In 2012, another PCS conviction resulted in a sentence of three years' imprisonment. In light of Means's history of repeated drug-related offenses, the State recommended a seven-year sentence.

¶ 7      In mitigation, defense counsel argued that Means was the father of two children and that he was worried about being involved in a Department of Children and Family Services (DCFS) proceeding. Means hoped to get out of prison as soon as possible in order to provide for his children. Although the presentence investigation report (PSI) indicated that Means was affiliated with the Traveling Vice Lords street gang, defense counsel reported that Means denied membership in the gang and asked the court not to consider that part of the PSI. Counsel represented that Means had been taking GED classes around the time of his arrest, and he was looking forward to obtaining his GED. During his incarceration, Means completed programs conducted through the Cook County department of corrections, such as janitorial cleaning and chemical training classes. In the PSI, Means denied having any problems with illegal drugs and reported participating in drug treatment on two separate occasions while incarcerated.

¶ 8      In allocution, Means stated that he felt as though he was not guilty, and he was still trying to change his life in light of his "background and everything." Although he intended to get his GED, he said, "things happen." Means acknowledged his "history of being in trouble" and stated that he was learning from his mistakes. To that end, he was working to focus on his education while in prison. Means told the court he was really trying to get back to his two young children because he was "going through DCFS with them" and he did not want them to grow up as he did, without a father around to set an example. Neither Means nor his counsel provided specifics about any DCFS proceedings.

¶ 9      Prior to announcing sentence, the trial court stated:

"For purposes of sentencing the court has considered the evidence at trial, the gravity of the offense, the Presentence Investigation Report, the financial impact of incarceration, all evidence, information, and testimony in aggravation and mitigation, any substance abuse issues and treatment, the potential for rehabilitation, the possibility of sentencing alternatives, the statement of the defendant, and all hearsay presented and deemed relevant and reliable."

¶ 10      The trial court then sentenced Means to an extended term of nine years' imprisonment and two years of mandatory supervised release.

¶ 11      Means immediately filed a motion to reconsider sentence, which the court denied.

¶ 12      On appeal, Means maintains that his sentence is excessive in light of the nature of the offense, his nonviolent criminal background, his history of substance abuse, and the financial burden incarceration places on taxpayers.

¶ 13      Means's 9-year sentence for the Class 2 felony of delivery of less than one gram of heroin was on the lower end of the 7-year to 14-year extended term sentencing range (730 ILCS 5/5-4.5-35(a) (West 2012)), which Means was eligible for in light of his prior Class 2 felony conviction (730 ILCS 5/5-5-3.2(b)(1) (West 2012)). Means does not contend that the trial court abused its discretion in determining that he was eligible for an extended term.

¶ 14      Where, as here, a defendant's sentence falls within the prescribed statutory limits, trial courts have broad discretion in imposing an appropriate sentence, and we will not find an abuse of that discretion unless the sentence is greatly at variance with the purpose and spirit of the law or is manifestly disproportionate to the offense. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995); *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court's superior position to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, and age mandates that a reviewing court refrain from

reweighing those factors and substituting its opinion for that of the trial court. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 15    Here, the trial court listed the factors considered in imposing sentence, including the evidence presented at trial, the gravity of the offense, the PSI, Means's substance abuse treatment, his statement in allocution, his rehabilitative potential, sentencing alternatives, and the financial impact of incarceration. Means characterizes the trial court's recitation of the factors it considered as "canned," given that the court included references to "testimony" in aggravation and mitigation and "hearsay," despite the fact that no live testimony was presented at his sentencing hearing. It would be helpful to defendants and reviewing courts alike for trial judges to articulate the grounds for the particular sentence imposed, particularly when the court elects to impose a sentence greater than that recommended by the prosecution. We strongly encourage that practice. But a trial court's failure to detail precisely for the record the process by which it determines a defendant's sentence is not grounds for reversal. *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). And we do not view the trial court's reference to testimony and hearsay as an indication that it did not, in fact, consider the factors relevant to Means's sentence.

¶ 16    Further, the trial court is presumed to have considered the mitigating evidence contained in the record. *People v. Anderson*, 325 Ill. App. 3d 624, 637 (2001). The record reflects that the trial court was presented with the mitigating evidence in the PSI and in defense counsel's argument at sentencing, and nothing suggests that the court did not consider this evidence. Although the State recommended a seven-year sentence, a court is not bound by the prosecution's sentencing recommendation (see *People v. Streit*, 142 Ill. 2d 13, 21-22 (1991)), any more than it is obligated to impose the minimum sentence available. Based on this record, we find no abuse of discretion by the trial court in sentencing Means to a term of nine years' imprisonment, which was well within the statutory range. To impose any lesser sentence would simply be substituting our judgment for that of the trial court.

¶ 17    Means nevertheless maintains that the trial court improperly balanced the small quantity of heroin involved in this offense with the high cost incarceration imposes on taxpayers. He argues that his history of drug abuse and nonviolent drug-related offenses are indicative of a man with a drug problem, and not an incorrigible criminal or drug kingpin who needed to be removed from society for nine years. But Means's argument overlooks his statement in the PSI denying any problems with illegal drugs and the fact that he had twice been afforded drug treatment while incarcerated. The presence of some mitigating factors does not necessarily warrant a minimum sentence (*People v. Flores*, 404 Ill. App. 3d 155, 158 (2010)), and we may not reverse the trial court's sentencing determination just because we might have weighed the relevant factors differently (*People v. Spencer*, 2016 IL App (1st) 151254, ¶ 38).

¶ 18    Means further argues that the excessive nature of his sentence is apparent by comparing it to his latest three-year sentence imposed in 2012. But this ignores Means's eligibility for a minimum sentence in this case of seven years, which he does not dispute. Thus, although the nine-year term imposed by the trial court was, indeed, three times greater than Means's 2012 sentence, it was nevertheless toward the lower end of the sentencing range to which he was admittedly subject. And the fact that Means's drug arrests were incurred in relatively rapid succession could support a trial judge's conclusion that a term in excess of the minimum was warranted.

¶ 19 The trial court was entitled to consider that Means received five drug related convictions in the six years before he committed this offense. Furthermore, despite receiving probation and more lenient prison sentences for his prior convictions, in addition to drug treatment while incarcerated, Means committed the instant offense approximately 15 months after he was sentenced to three years' imprisonment on his 2012 case. Although Means's release date from his 2012 conviction does not appear in the record, the three-year sentence was imposed in that case on May 24, 2012. Given the August 27, 2013 date of arrest in this case, it is apparent that Means reoffended shortly after his release from prison.

¶ 20 Accordingly, we do not find that Means's sentence was greatly at variance with the purpose and spirit of the law or manifestly disproportionate to the seriousness of the offense. See *People v. Teague*, 2013 IL App (1st) 110349, ¶¶ 37-38 (affirming a defendant's sentence over his contention that the trial court failed to account for his rehabilitative potential and finding that the defendant's prior opportunities for rehabilitation were relevant aggravating considerations).

¶ 21 We have considered Means's suggestion that "the circuit court's sentence may also have been improperly driven by a desire to punish [Means] for exercising his right to go to trial." A trial court may not punish a defendant who has exercised his constitutional right to a trial by imposing a longer sentence that it would have had the defendant agreed to plead guilty. *People v. Moriarty*, 25 Ill. 2d 565, 567 (1962); see also *People v. Latto*, 304 Ill. App. 3d 791, 804 (1999) (sentence will be set aside where it is evident from the record that the court imposed the sentence, at least in part, because the defendant availed himself of his right to a trial instead of pleading guilty). But the record must clearly show that the court imposed the greater sentence as a punishment for demanding a trial. *People v. Carroll*, 260 Ill. App. 3d 319, 349 (1992). For example, in *Moriarty*, our supreme court found that the trial court's remarks at sentencing constituted reversible error where the trial court stated:

" 'If you'd have come in here, as you should have done in the first instance, to save the State the trouble of calling a jury, I would probably have sentenced you, as I indicated to you I would have sentenced you, to one to life in the penitentiary. It will cost you nine years additional, because the sentence now is ten to life in the penitentiary.' " *Moriarty*, 25 Ill. 2d at 567.

¶ 22 In this case, the trial court made no mention of plea negotiations or even hinted at a prior offer during Means's sentencing hearing. Moreover, the record reflects that the trial court's pretrial inquiries were limited to asking whether any plea offers were made and whether they fell within the extended term sentencing range, inquiries that are very common for trial judges to make. Thus, it is not apparent that the trial judge was made aware of the details of any pretrial offers made by the State. Consequently, because the record is devoid of any intimation from the trial court that it would have been better for Means if he pled guilty or that the court imposed the nine-year sentence to punish Means for going to trial, Means' argument fails.

¶ 23 Finally, Means maintains, and the State concedes, that his controlled substance fine should have been $1000 and not $2000. See 720 ILCS 570/411.2(a)(2), (3) (West 2012) (providing that the controlled substance fine is $2000 for a Class 1 felony and $1000 for a Class 2 felony). Means failed to challenge his fines and fees in the trial court and so has forfeited review of that issue. In his brief, citing *People v. Lewis*, 234 Ill. 2d 32 (2009), Means invokes plain error as a basis for review of this unpreserved error. Although not directly on point, since it related to the assessment of an evidenced based fine without evidence to support it, *Lewis* could arguably

- 5 -

support plain error review here. The State has not argued against plain error review and so has forfeited that argument. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000); Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) ("[p]oints not argued are waived"). Therefore, under the circumstances of this case, we deem it appropriate to address this issue on the merits. Accordingly, as the amount of the fine was clearly in error, we direct the clerk of the circuit court of Cook County to correct the fines and fees order to reflect a controlled substance fine of $1000 and not $2000.

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed; fines, fees, and costs order corrected.