# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2018 IL App (1st) 160924

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEAN BROWN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-0924 |
| Filed | October 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-20; the Hon. Arthur F. Hill Jr., Judge, presiding. |
| Judgment | Affirmed as modified and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Jonathan Pilsner, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Elizabeth Reilly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justice Lavin concurred in the judgment and opinion.<br>Justice Hyman concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1        Following a bench trial, Sean Brown was found guilty of one count of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2014)), two counts of unlawful use or possession of a weapon by a felon (UUWF) (*id.* § 24-1.1(a)), and two counts of aggravated unlawful use of a weapon (AUUW) (*id.* §§ 24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C)). The court merged the counts and sentenced Brown to 13 years' imprisonment on the AHC conviction. On appeal, Brown contends that (i) his sentence is excessive because his criminal background does not justify a 13-year sentence, (ii) the trial court relied on a sentencing factor inherent in the offense, and (iii) the trial court deprived him of his right to a meaningful appeal by failing to fully articulate its sentencing decision. Brown also challenges the fines and fees imposed against him. We affirm, but correct the order assessing fines, fees, and costs.

¶ 2        On January 1, 2015, at about 2:50 a.m., Chicago police officers Ohlson and Lopez curbed a vehicle along West Roosevelt Road for not using its turn signal to change lanes. Brown was seated in the rear passenger seat, behind the driver. When the driver of the vehicle revealed that he did not have a valid driver's license, Ohlson asked the driver and Brown to step out of the vehicle. As Brown stepped out of the vehicle, Ohlson saw him remove what appeared to be a handgun from his pants pocket and throw it on the rear floorboard of the vehicle. Brown fled as Ohlson tried to detain him, and Ohlson and Lopez gave chase on foot. A short time later, an assisting unit detained Brown along South Albany Avenue, and Ohlson identified him. Lopez recovered a handgun containing five live rounds of ammunition from the rear floorboard of the curbed vehicle from which Brown fled.

¶ 3        Brown was later charged with AHC, two counts of UUWF, and five counts of AUUW. At Brown's request, the parties and the trial court held a conference, which was not transcribed. After the conference, the court announced that it had "indicated" at the end of the conference that, if Brown pled guilty, it would sentence him to 10 years' imprisonment. Brown rejected the court's offer, and the case proceeded to trial. Before trial, the state elected not to proceed on four counts of AUUW, and proceeded on the remaining counts.

¶ 4        In addition to the evidence summarized above, the State admitted into evidence at Brown's trial certifications of Brown's prior convictions for UUWF (2008) and manufacture or delivery of a controlled substance (2009). The State also admitted a certification from Tracy Shultz of the Firearms Services Bureau of the Illinois State Police, stating that, as of January 20, 2015, records of the Firearms Services Bureau show Brown had never been issued a firearm owner's identification card or a concealed carry license. Brown rested without presenting any evidence. The trial court found Brown guilty on all counts.

¶ 5        At sentencing, the presentence investigation report (PSI) showed Brown had been sentenced on multiple felony convictions: UUWF (2008—3 years Illinois Department of Corrections (IDOC)), manufacture or delivery of a controlled substance (2009—3 years IDOC), and possession of a controlled substance (2006—2 years 710-1410 probation, 2007—1 year IDOC, 2012—18 months IDOC, 2013—3 years IDOC). At the time of his arrest in 2015, Brown was 26 years old, was working as a part time laborer earning minimum wage, and regularly took ecstasy.

¶ 6        The State argued in aggravation that Brown had six prior felony convictions, including Class 2 felony convictions for UUWF and manufacture or delivery of a controlled substance, as well as four convictions for Class 4 felony possession of a controlled substance. In

mitigation, defense counsel argued that the court should consider the nature of Brown's prior felony convictions, which were "all, but for one, narcotics related." Counsel maintained that there was no indication in Brown's background that he engaged in violence or used a firearm to commit a crime. Counsel emphasized that Brown was turning 28 years old at the time of sentencing, had completed his GED, and had participated in drug and alcohol counseling and the Cook County Department of Corrections' PACE program. Counsel also noted that Brown had a bad family background, where "everybody" in his family had been incarcerated. Counsel requested that Brown receive a sentence "toward" the minimum. In allocution, Brown requested leniency.

¶ 7 In announcing its sentence, the trial court stated that it had considered all factors in aggravation and mitigation, including Brown's criminal history. The court acknowledged that, apart from his 2008 UUWF conviction, "the bulk" of Brown's criminal history was drug related and nonviolent. The court noted that Brown would be obligated to serve 85% of his sentence and then sentenced him to 13 years' imprisonment for being an armed habitual criminal. The court merged the other convictions into the armed habitual criminal conviction, credited Brown with 432 days' time served, and assessed $844 in fines, fees, and costs. The court later denied Brown's motion to reconsider sentence.

¶ 8 Here, Brown contends that his sentence is excessive. The Illinois Constitution requires a trial court to impose a sentence that achieves a balance between the seriousness of the offense and the defendant's rehabilitative potential. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46 (citing Ill. Const. 1970, art. I, § 11, and *People v. Lee*, 379 Ill. App. 3d 533, 539 (2008)).

> "To find the proper balance, the trial court must consider a number of aggravating and mitigating factors including: 'the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education.' " *Id.* (quoting *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992)).

A reviewing court will not reweigh sentencing factors and may not substitute its judgment for that of the trial court merely because it would have weighed the factors differently. *Id.*

¶ 9 A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider these factors. *People v. Snyder*, 2011 IL 111382, ¶ 36. There is a presumption that a trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence in the record that the trial court did not consider mitigating factors. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). A reviewing court may not modify a defendant's sentence absent an abuse of discretion. *Snyder*, 2011 IL 111382, ¶ 36. An abuse of discretion will be found only "where the sentence is greatly at variance with the spirit and purpose of the law[ ] or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

¶ 10 The offense of armed habitual criminal is a Class X felony, punishable by 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7(b) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). As Brown's 13-year sentence falls within the permissible statutory range, we presume it is proper. See *Knox*, 2014 IL App (1st) 120349, ¶ 47.

¶ 11 Brown argues that the trial court abused its discretion in sentencing him because (1) his 13-year sentence—three years greater than the sentence it offered in exchange for his guilty plea—penalized him for exercising his right to trial, (2) the trial court deprived him of any meaningful opportunity to appeal his sentence because of its "scant" explanation of the reasons for the sentence, (3) the trial court relied upon an improper sentencing factor in considering Brown's previous UUWF conviction, on which his AHC conviction was predicated, and (4) his sentence is excessive in light of his drug-related, and non-violent criminal background.

¶ 12 Brown first argues that his sentence amounts to punishment for exercising his right to a trial. Although it may be proper in imposing sentence to grant concessions to a defendant who enters a plea of guilty, a court may not penalize the defendant for asserting his right to a trial. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). We will set a sentence aside if the trial court's remarks evince that the imposed sentence resulted, at least in part, from the fact that defendant did not plead guilty and instead exercised his right to trial. *People v. Moore*, 263 Ill. App. 3d 1, 11 (1994). A sentence may be set aside on this ground only if it is clearly evident from the record as a whole that the sentence was improperly imposed. *Ward*, 113 Ill. 2d at 526-27.

¶ 13 There is no such evidence in the record here. The trial court did not mention the earlier plea offer at sentencing. The mere fact that it imposed a greater sentence than that offered in the plea deal does not support an inference that it imposed the sentence as a punishment for demanding trial. *People v. Andrews*, 2013 IL App (1st) 121623, ¶ 19.

¶ 14 Brown cites *People v. Love*, 139 Ill. App. 3d 104, 116-18 (1985), where this court reduced a sentence imposed after trial that was more than double the sentence the defendant had received before withdrawing his guilty plea. The court found there was no suggestion "that the more severe sentence was based on conduct occurring after the original sentence had been imposed." *Id.* at 117. But as we observed in *People v. Parsons*, 284 Ill. App. 3d 1049 (1996):

"[T]here is nothing inherently unconstitutional in increasing a sentence after trial. Such an increase need not connote the imposition of a penalty because the defendant elected to proceed to trial, but, rather, the disparity may simply reflect an inducement given to a defendant to plea bargain in exchange for a sentence less than that which is ordinarily warranted." *Id.* at 1064.

Further, a sentence greater than that offered before trial may be explained by the court's consideration of additional evidence regarding the circumstances of the crime admitted at trial. *People v. Peterson*, 311 Ill. App. 3d 38, 53 (1999) (higher sentence following trial may be justified by trial court's greater appreciation of nature and extent of crime during trial).

¶ 15 Brown argues there is "nothing particularly aggravating" to justify a 30% increase over the sentence he was offered before trial. However, he rejected the sentence the court offered in order to induce him to accept the plea, and thus chose not to take advantage of the inducement of a lower sentence. See *People v. Moss*, 205 Ill. 2d 139, 171 (2001) ("A court may grant dispositional concessions to defendants who enter a guilty plea when the public's interest in the effective administration of justice would thereby be served."). Nothing in the record demonstrates that the court held this against him at sentencing. Consequently, it is not clearly evident that the trial court abused its discretion in imposing a sentence higher than its plea offer. See *People v. Means*, 2017 IL App (1st) 142613, ¶¶ 21-22 (finding that the trial court did not punish the defendant for exercising his right to a trial, in part, because the trial court did not mention plea negotiations at sentencing).

¶ 16    Nevertheless, Brown argues that if we find the trial court's sentence did not punish him for exercising his right to a trial, we should instead hold that the judge's "minimal comments" at sentencing deprived him of a record necessary to meaningfully challenge his sentence, violating his constitutional rights of appeal and to due process. He contends that, due to the trial court's "sparse" findings on the record at sentencing, we cannot determine if the trial court abused its discretion in sentencing him to 13 years' imprisonment. Brown asks that we remand his case to the trial court with specific instructions to more adequately explain the justification for his sentence.

¶ 17    Brown acknowledges that, in *People v. Davis*, 93 Ill. 2d 155, 162-63 (1982), our supreme court held that the trial court does not have a mandatory statutory duty to give a statement of reasons for imposing a particular sentence. See also *People v. Martin*, 2012 IL App (1st) 093506, ¶ 48 (trial court not required to detail for the record the process by which it concluded that the penalty it imposed was appropriate). Nevertheless, Brown argues that *Davis*'s holding has been distorted by the appellate court in a way that impedes review of sentencing errors and is contrary to statutory language. See 730 ILCS 5/5-4.5-50(c) (West 2014) ("The sentencing judge in each felony conviction shall set forth his or her reasons for imposing the particular sentence entered in the case ***.").

¶ 18    In support of his argument, Brown cites to dissenting and specially concurring opinions, asserting that, in the interest of fairness and transparency, the trial court should give defendant an explanation of its sentencing decision. See *Davis*, 93 Ill. 2d at 163-68 (Simon, J., dissenting); *People v. Jackson*, 375 Ill. App. 3d 796, 804-10 (2007) (McDade, J., specially concurring, and Wright, J., concurring in part and dissenting in part); *People v. Bryant*, 2016 IL App (1st) 140421, ¶¶ 25-35 (Hyman, J., specially concurring). While we consider and respect the views of our colleagues so expressed, these are not binding authorities. *People v. Holt*, 372 Ill. App. 3d 650, 653 (2007) ("concurring opinions, while persuasive, are not binding authority"). And although we encourage trial judges to explain the reasons for the sentence imposed in each case, we adhere to the "well-established precedent" that a trial court is neither required to specify on the record the reasons for the sentence imposed, nor recite and assign value to each factor presented at the sentencing hearing. *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 95. Nor does our review of the record reveal that the trial court's explanation for Brown's sentence inadequate. At Brown's sentencing hearing, the court explicitly took into account defense counsel's primary argument: that although Brown had six felony convictions in his background, only one of them (UUWF) was arguably violent and the rest were all nonviolent narcotics-related offenses. It would have added nothing to the sentencing hearing, to Brown's ability to challenge his sentence as excessive, or to our ability to review that sentence for the court to reiterate all the aggravating and mitigating factors counsel had spread of record moments before. And even before trial, Brown was aware that the court did not consider a minimum sentence appropriate as the court informed him it would impose a 10-year sentence (four years over the 6-year minimum) if he elected to plead guilty. Accordingly, we do not find that the lack of an expansive explanation of the reasons for the court's selection of a 13-year sentence (still toward the lower end of the sentencing range) deprived Brown of the opportunity to mount a meaningful challenge to his sentence.

¶ 19    Brown also argues that the trial court relied upon an improper sentencing factor when it considered his prior UUWF conviction as an aggravating factor, even though, as charged, the UUWF conviction already served as a predicate offense for AHC. See 720 ILCS 5/24-1.7(a)(2)

(West 2014) (enumerating UUWF as a predicate offense of AHC). The legislature has the power "to codify provisions which enhance a criminal offense (*e.g.*, misdemeanor to a felony) or enhance the applicable range of punishment (*e.g.*, extended term sentence or Class X sentencing). This is known as 'single enhancement.' " *People v. Thomas*, 171 Ill. 2d 207, 223 (1996). Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty. *Id.* Whether the trial court considered an improper double enhancement when sentencing Brown is a question of law, which we review *de novo*. See *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 31.

¶ 20    We reject Brown's argument that he suffered a double enhancement. In *Thomas*, 171 Ill. 2d at 224-25, our supreme court explained, "the discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the defendant, within the available parameters, is a requisite part of every individualized sentencing determination." Thus, "[t]he judicial exercise of this discretion, in fashioning an appropriate sentence within the framework provided by the legislature, is not properly understood as an 'enhancement.' " *Id.* at 225. As part of that framework, the trial court must consider a number of aggravating and mitigating factors in imposing its sentence, including the defendant's criminal history. *Id.* at 227-28. *Thomas*, therefore, found the trial court's use of prior convictions to impose a Class X sentence did not preclude it from "reconsidering" the same prior convictions and using them a second time as an aggravating factor in sentencing. *Id.* at 229.

¶ 21    Although *Thomas* concerned the mandatory Class X sentencing statute rather than the Class X AHC offense, we find the court's reasoning applicable. Thus, although Brown's prior UUWF conviction was used as a predicate offense for the AHC conviction, the trial court could properly consider the UUWF conviction as part of Brown's criminal history. See *id.* at 227-28. To paraphrase *Thomas*, while the *fact* of Brown's prior UUWF conviction determined his eligibility for an AHC charge, it is the *nature and circumstances* of that conviction which, along with other factors in aggravation and mitigation, determined the exact length of his sentence. See *id.* Thus, in order to properly consider Brown's criminal history, the court had to consider his prior UUWF conviction.

¶ 22    Further, the trial court, in announcing its sentencing decision, is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error. *Andrews*, 2013 IL App (1st) 121623, ¶ 15. Here, the court did not expressly state that it considered Brown's prior UUWF conviction as an aggravating factor. Rather, it mentioned the conviction to provide an accurate description of Brown's criminal history, which it ultimately characterized as "drug related and non-violent." In sum, Brown's sentence was not an improper double enhancement.

¶ 23    Brown also argues that his sentence was excessive because his criminal history does not include "any violent acts or arrests" and the trial court did not "fully appreciate" mitigating evidence of his participation in drug and alcohol counseling and the PACE program and the fact that he earned his GED. As mentioned, we presume that the trial court considered all relevant factors in determining a sentence absent evidence in the record demonstrating that it did not consider mitigating factors. *Flores*, 404 Ill. App. 3d at 158.

¶ 24    Brown has not identified explicit evidence showing that the trial court did not consider relevant mitigating factors. They were mentioned by Brown's counsel during the sentencing hearing, and the same information was in the PSI that the court indicated it had received and

read before the hearing. There is no basis for this court to presume that the trial court did not consider mitigating factors. See *Means*, 2017 IL App (1st) 142613, ¶ 16 ("the trial court is presumed to have considered the mitigating evidence contained in the record"). In addition, the trial court explicitly stated that it considered all factors in aggravation and mitigation. Given this record, Brown essentially asks us to reweigh sentencing factors and substitute our judgment for that of the trial court. This we will not do. See *Knox*, 2014 IL App (1st) 120349, ¶ 46. Because the mitigating evidence regarding Brown's nonviolent background, his education, and his efforts at rehabilitation was presented to the trial court, we presume the court considered it, and Brown has not affirmatively shown otherwise. The court did not abuse its discretion in sentencing Brown to 13 years' imprisonment.

¶ 25    Brown next contends that we should correct the order assessing fines, fees, and costs to vacate various assessments and characterize other assessments as fines subject to offset by his presentence custody credit. Brown concedes that he did not preserve these issues by raising them to the trial court. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). He argues we may review the issues under plain error or Illinois Supreme Court Rule 615(b). The State acknowledges the forfeiture but agrees that we may review these claims for the first time on appeal. Because the State does not argue Brown forfeited review of his fines and fees challenges, it has waived any forfeiture argument. See *People v. Reed*, 2016 IL App (1st) 140498, ¶ 13 ("the rules of waiver and forfeiture are also applicable to the State"). Accordingly, while we disagree that plain error or Rule 615(b) provide avenues for review of these forfeited issues (*People v. Grigorov*, 2017 IL App (1st) 143274, ¶ 14; *People v. Griffin*, 2017 IL App (1st) 143800, ¶ 9, *appeal allowed*, No. 122549 (Ill. Nov. 22, 2017)), we will review Brown's claims. We review the propriety of a trial court's imposition of fines and fees *de novo*. *Reed*, 2016 IL App (1st) 140498, ¶ 13.

¶ 26    The State and Brown correctly agree the $100 trauma fund fine was improperly imposed. This fine should be "added to every penalty imposed in sentencing for a violation of Sections 24-1.1, 24-1.2, or 24-1.5 of the Criminal Code of 1961 or the Criminal Code of 2012." 730 ILCS 5/5-9-1.10 (West 2016). The fine is therefore inapplicable to Brown's sentence for the offense of armed habitual criminal, which is a violation of section 24-1.7 of the Criminal Code of 2012. See 720 ILCS 5/24-1.7(a) (West 2014). Accordingly, we vacate the trauma fund fine assessed against Brown. See *Bryant*, 2016 IL App (1st) 140421, ¶¶ 21-22.

¶ 27    We also vacate the $250 DNA identification system fee (730 ILCS 5/5-4-3(j) (West 2016)), which was improperly imposed because Brown was already convicted of a felony offense in 2008 and 2009 in unrelated cases. See *People v. Leach*, 2011 IL App (1st) 090339, ¶ 38 (a defendant convicted of at least one previous felony conviction, after the DNA fee went into effect on January 1, 1998, is presumed to have already submitted DNA and paid the fee).

¶ 28    The State and Brown correctly agree that the $5 court system fee (55 ILCS 5/5-1101(a) (West 2016)) and the $5 electronic citation fee (705 ILCS 105/27.3e (West 2016)) should be vacated. The court system fee does not apply because Brown violated neither the Illinois Vehicle Code nor a municipal ordinance. 55 ILCS 5/5-1101(a) (West 2016). The electronic citation fee does not apply to Brown's felony conviction for being an armed habitual criminal. See *People v. Smith*, 2018 IL App (1st) 151402, ¶ 12. Accordingly, we vacate both fees.

¶ 29    Brown lastly claims eight other assessments labeled as fees are actually fines subject to offset by his presentence custody credit. A defendant is entitled to a credit of $5 against his

fines, but not fees, for each day spent in presentence custody. *Reed*, 2016 IL App (1st) 140498, ¶ 14 (citing 725 ILCS 5/110-14(a) (West 2012)). The nature of an assessment, not its statutory label, determines whether the assessment is a fee or fine. *Id.* A fee is a charge that " 'seeks to recoup expenses incurred by the state,' or to compensate the state for some expenditure incurred in prosecuting the defendant." *People v. Graves*, 235 Ill. 2d 244, 250 (2009) (quoting *People v. Jones*, 223 Ill. 2d 569, 582 (2006)). Whereas a fine is punitive in nature and serves as " ' "a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." ' " *Id.* (quoting *Jones*, 223 Ill. 2d at 581). The central characteristic that distinguishes a fee from a fine is "whether the charge seeks to compensate the state for any costs incurred as the result of prosecuting the defendant." *Id.* Brown has 432 days of presentence custody and is therefore entitled to up to $2160 of presentence custody credit.

¶ 30    It is well established that, as the parties correctly agree, the $50 court system fee (55 ILCS 5/5-1101(c)(1) (West 2016)) and the $15 state police operations fee (705 ILCS 105/27.3a(1.5) (West 2016)) are actually fines that should be offset by the credit. See *Smith*, 2018 IL App (1st) 151402, ¶ 14 (citing *People v. Ackerman*, 2014 IL App (3d) 120585, ¶ 30, and *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31).

¶ 31    The parties disagree regarding Brown's remaining challenges to his fees. Brown argues that the $2 Public Defender Records Automation Fund fee (55 ILCS 5/3-4012 (West 2016)) and the $2 State's Attorney Records Automation Fund fee (*id.* § 4-2002.1(c)) are fines. However, "the bulk of legal authority has concluded that both assessments are fees rather than fines because they are designed to compensate those organizations for the expenses they incur in updating their automated record-keeping systems while prosecuting and defending criminal defendants." *People v. Brown*, 2017 IL App (1st) 150146, ¶ 38 (compiling cases). See *contra People v. Camacho*, 2016 IL App (1st) 140604, ¶¶ 47-56 (concluding these assessments are fines). In accordance with the weight of authority, we also find these assessments to be fees not subject to presentence custody credit. However, we vacate the $2 Public Defender Records Automation Fund fee because Brown was represented by private counsel at trial. See *People v. Brown*, 2017 IL App (1st) 142877, ¶ 78.[1]

¶ 32    Finally, Brown argues that the $190 felony complaint filing fee (705 ILCS 105/27.2a(w)(1)(A) (West 2016)), the $25 automation fee (*id.* § 27.3a(1)), the $25 document storage fee (*id.* § 27.3c(a)), and the $25 court service fee (55 ILCS 5/5-1103 (West 2016)) are fines that should be offset by the credit.[2] In considering similar challenges to these assessments, we have already found that they are fees because they are "compensatory" and

---

[1]We note that in an appeal pending in the supreme court, *People v. Clark*, 2017 IL App (1st) 150740-U, *appeal allowed*, No. 122495 (Ill. Sept. 27, 2017), the Illinois Attorney General has conceded that the $2 Public Defender Records Automation Fee is a fine based on the fact that it is assessed in all cases, even those in which the defendant was represented by private counsel. The Attorney General maintains that the same assessment on behalf of the state's attorney's office is a fee. However, the state's attorney has never made such a concession in this court and, frankly, it makes no sense. The nature of the assessment is the same whether the office benefitted is the state's attorney or the public defender and we have consistently determined that the assessment by its nature is a fee. The fact that the fee is assessed in cases involving private counsel simply means the fee, as here, should be vacated.

[2]The parties state the document storage fee assessed against Brown was $15. However, the fines, fees, and costs order indicates that the document storage fee assessed against Brown was $25.

represent a "collateral consequence" of a defendant's conviction. (Internal quotation marks omitted.) *Brown*, 2017 IL App (1st) 150146, ¶ 39 (quoting *People v. Tolliver*, 363 Ill. App. 3d 94, 97 (2006)); *Smith*, 2018 IL App (1st) 151402, ¶ 15. Therefore, these assessments will not be offset by the credit.

¶ 33    In sum, we affirm Brown's sentence and vacate the $100 trauma fund fine, the $250 DNA identification system fee, the $5 court system fee, the $5 electronic citation fee, and the $2 Public Defender Automation Fund fee. We also order that the $50 court system fee and $15 State Police operations fee should be offset by Brown's presentence custody credit. We remand to the circuit court with directions to modify the fines, fees, and costs order accordingly. The trial court's judgment is affirmed in all other respects.

¶ 34    Affirmed as modified and remanded with directions.

¶ 35    JUSTICE HYMAN, concurring in part and dissenting in part:

¶ 36    I agree with my colleagues that Brown's sentence should be affirmed and agree with their disposition of the majority of Brown's challenges to the various fines and fees imposed. I disagree with the holding as to the State's Attorney Records Automation charge. As I previously explained in *People v. Camacho*, 2016 IL App (1st) 140604, the language of the relevant statutes demonstrates that this charge is assessed to fund the technology of that office, not to compensate for the costs of prosecuting a particular defendant. *Id.* ¶ 50. So, this charge is a fine, not a fee, and Brown is entitled to presentence credit against it.

¶ 37    As to the Public Defender's Records Automation charge, the majority correctly vacates it because Brown did not use the services of the public defender. As an aside, the majority criticizes the Illinois Attorney General's Office for conceding, in a similar case, that this charge is a fine. I agree with the Attorney General's concession. See *People v. Clark*, 2017 IL App (1st) 150740-U, *appeal allowed*, No. 122495 (Ill. Sept. 27, 2017). That case was argued September 12, 2018; hopefully, we will soon have a definitive answer to this question.