2020 IL App (1st) 173025-U

No. 1-17-3025

Order filed August 21, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 15472 |
| | ) | |
| KAABAR VENSON, | ) | Honorable |
| | ) | William T. O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 15-year sentence for residential burglary is affirmed where the record establishes that the trial court did not abuse its discretion in sentencing defendant to a sentence almost twice that which it had offered him during a pretrial Rule 402 conference.

¶ 2    Following a bench trial, defendant Kaabar Venson was convicted of residential burglary

(720 ILCS 5/19-3(a) (West 2016)) and sentenced to 15 years' imprisonment. On appeal, defendant

contends that the trial court abused its discretion by imposing a significantly greater sentence than

what it offered during a pretrial conference, under Illinois Supreme Court Rule 402 (eff. July 1, 2012), where (1) the record did not support the court's finding that the case became "more egregious" after trial; and (2) the court improperly relied on factors during sentencing it "fully considered" during the conference. We affirm.[1]

¶ 3    Defendant was charged with one count of residential burglary, arising from events which took place on September 19, 2016. Prior to trial, the parties requested a Rule 402 conference with the court, which took place on the record.

¶ 4    During the conference, the State gave a brief factual overview of the offense. On September 19, 2016, the victim was at home when she heard the faucet running and "steps downstairs," so she called 911. She discovered that "a MAC book, a $1700 [tote] bag, purse, and money" had been taken. The police detained defendant a short time later and recovered the stolen property. The victim's driver's license, Ventra card, and credit cards were inside the laptop.

¶ 5    The State informed the court of defendant's criminal background and explained that defendant was "extendable" and "nonprobational" based on his 2012 convictions for harassing a witness and armed robbery. The harassment offense took place while defendant was on bond for an aggravated assault with a firearm and involved the victim of that crime. Defendant approached the victim as she was walking to her car and asked her if she was going to the court date for the aggravated assault case. The victim indicated she was, and defendant began choking her. An individual intervened, and defendant told that person "he better make sure the victim doesn't go to court."

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 6 In the armed robbery case, defendant stopped the victim, searched his book bag, displayed a firearm, and placed it on the victim's side. Defendant took $75 from the victim's wallet and, when the victim attempted to take his money back, defendant placed the firearm to the victim's face.

¶ 7 Defendant pled guilty to the harassment and armed robbery offenses, and received a sentence of six years' imprisonment.[2] At that time, he was also sentenced to three years' imprisonment on aggravated unlawful use of a weapon. Defendant was paroled in August 2016, one month before he committed the residential burglary at issue.

¶ 8 In mitigation, defense counsel informed the court defendant was 23 years old, lived with his girlfriend, and was taking medications. Defense counsel acknowledged that defendant's "background does not sound positive," but there was no identification of him in the home, and he was only seen with "a book bag" containing items in it. Counsel requested that defendant receive the minimum sentence.

¶ 9 The court offered defendant a sentence of eight years' imprisonment. Defendant rejected the offer. The court then revoked the offer.

¶ 10 The case proceeded to a bench trial. As defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount only those facts necessary to resolve the issue on appeal.

¶ 11 On September 19, 2016, at approximately 10:30 p.m., Susan Tobias was reading in bed in the upstairs of her home. As was her custom, she had left the downstairs window over the kitchen

---

[2] The State told the court that the plea was for "armed robbery, no firearm" because no firearm was recovered.

sink open several inches for fresh air. Tobias heard the sounds of "wine glasses clinking" and water from the kitchen faucet. She woke her husband; they heard the sound of someone running and the front door close. Tobias determined that her silver MacBook Air computer, iPhone, the purse in which she kept her credit cards and driver's license, tote bag, and prescription sunglasses case were all missing. She called the police, who came and spoke with her. They left abruptly but returned "within 10 to 15 minutes" with a "black knapsack" with several computers inside. Inside the knapsack, Tobias identified her computer, as well as her iPhone, credit cards, driver's license, Ventra card, and a "very expensive bag from Italy." At this time, Tobias saw "[t]he kitchen window was further ajar than it normally [was]," and a screen on the outside of the window had been moved. Tobias went outside with an officer because she was "a little rattled." She saw a garbage bin placed right under the window, where it had never been before. The window was "well above where you could reach in," which was why she left it open. Even standing on a garbage bin, "you'd have to hoist yourself into the kitchen."

¶ 12    Ilya Soussa was walking her dog at approximately 10:40 p.m. on September 16, 2019, in the area of Tobias' home. She saw a man with a backpack and two bags standing behind a car. The man placed a silver MacBook into the backpack. Soussa thought it was unusual behavior and walked home, where she saw the man passing in front of her doors. Soussa called the police at 10:46 p.m.

¶ 13    Officer Darrion Blackburn responded to Tobias's burglary call. He then left her home to search for a man described by Soussa and seen "trying to force a laptop in a backpack." Officer Blackburn and his partner saw a man matching Soussa's description (identified in court as

defendant). They detained and searched defendant. The officers found the items described by Tobias.

¶ 14    Detective Demetrios Kolliopoulos testified to his interview of defendant. Defendant told the detective that he had run into a friend at the time of the incident. His friend, whose name defendant did not know, went inside a home while defendant waited on the sidewalk. When his friend returned, he handed defendant "a book bag that had computers inside." Defendant and his friend "split up." Defendant kept the bag because he believed he was less likely to be stopped by police. Defendant was hoping to "make a few dollars off of [the computers] by selling them."

¶ 15    After denying defendant's motion for a directed verdict, the court admonished defendant that he had a right to testify, he could discuss whether to testify with his attorney, and the choice as to whether to testify was his to make. Defendant stated that he did not wish to testify and that no one had threatened him or promised him anything to make this decision.

¶ 16    The trial court found defendant guilty of residential burglary. After denying defendant's motion for a new trial, the court proceeded to a sentencing hearing.

¶ 17    Defendant's presentence investigation report (PSI) indicated that defendant had five adult convictions: possession of cannabis (2012), harassment of witness (2013), armed robbery (2013), aggravated unlawful use of a weapon (2013), and aggravated assault (2016). His sentences included concurrent six-years terms of imprisonment for harassment of witness and armed robbery, consecutive to a three-year sentence for the aggravated unlawful use of a weapon offense. Defendant also had several juvenile adjudications, including convictions for aggravated battery (2009), possession of cannabis (2009), and attempted robbery (2010).

¶ 18    The PSI included information about defendant's personal background. Defendant was born in December 1993 and "grew up under the DCFS system" after his father, who raised him, was sentenced to federal prison. Defendant did not finish high school because he went to jail. He wanted to receive his GED and study business. He registered for a GED program, but was arrested before he could begin the program. Defendant has two children, and his relationship with them is "good." His half-brother cared for defendant's six-year-old disabled daughter. Defendant was diagnosed "as ADD, bipolar, schizophrenic, paranoia [*sic*], and psychotic," and medicated with "Effexor, Trazodone, Ritalin, Conserta, Adderall, and Zoloft."

¶ 19    In aggravation, the State first argued the facts of the case, recounting them for the court. The State then noted there had been "an additional call of an unlawful entry burglary" in the same area around 10:00 p.m. the same evening, in which two Apple MacBooks, an iPad, and jewelry were taken. When defendant was detained, he had three Apple MacBook laptops, an iPhone, an iPad, two phone chargers, and jewelry in his backpack.

¶ 20    The State next argued that the offense occurred "one month and two days" after defendant was placed on parole for his armed robbery and harassment of a witness convictions. The State recounted the facts from defendant's armed robbery and harassment of a witness cases, which were consistent with the recitation of those facts from the Rule 402 conference and mentioned defendant's aggravated unlawful use of a weapon conviction.

¶ 21    The State also relayed the facts of defendant's juvenile aggravated battery of a school employee adjudication, where he received 18 months' probation which terminated unsatisfactorily. In that case, defendant grabbed his teacher by the arm and pushed her, telling her "[y]ou better watch yourself because I'm going to get you after school." When the police officers arrived, he

resisted arrest. The State also detailed defendant's 2010 attempt robbery case, as a juvenile, where defendant approached the victim and attempted to steal her purse.

¶ 22    The State argued defendant's background included several instances of violence and he was "a danger to the public." The State contended that defendant was extendable based upon the prior armed robbery conviction, and requested that defendant be sentenced in the "upper register" of the sentencing range, which was 4 to 30 years' imprisonment.

¶ 23    The State also read a statement from Tobias:

> "I hold no ill-will against you, but wonder why you did it. A few thousand dollars and look where you've ended up. Get an education. It is a life changer.
>
> An education will help you go from being a taker to being a giver and an earner. It will increase your chances for becoming a productive member of society."

¶ 24    In mitigation, defense counsel reiterated that defendant grew up in the DCFS system from the age of two when his father was imprisoned, defendant wished to pursue a GED, and defendant had mental health issues throughout his entire life. Defense counsel argued defendant was a young man who "had to survive on his own from age of 13" and had no adults in his life to provide a good example. While defendant did not show "good judgment" that day, he had faced difficult hurdles in his life. Defense counsel stated that Tobias' statement was "very telling," and with leniency, defendant could focus his energy and move forward with his education. Defense counsel requested the minimum sentence of four years' imprisonment.

¶ 25    In allocution, defendant denied that he committed the crime claimed there was no evidence against him and sought to diminish his criminal background. He also asserted that he would have testified if defense counsel had not told him not to do so. Defendant stated

"[T]hey didn't catch me with nothing. There ain't no reason. There ain't no evidence. ***

There's no fingerprints or nothing. There's none of that. ***

And you say that you found me guilty because the police told you that I gave them something. I'm on parole. Why would I sit there and tell the police that I did something and I'm on parole? How does that really sound? That doesn't even sound right.

And they fail to even bring up to the court that I just had a job at Wrigley Field that I clocked out at 10:39. So, how could I commit a burglary at 10:41? That's like 28 blocks or something away from my job. That quick? ***

*** I got locked up because of the victim supposed to have said that she seen me first and said that she called 911 describing a male with black pants and some other stuff. The whole time I had a white shirt and red pants on. Bright red pants. That's nowhere close to black. So, that's an invalid description.

***

Then they say that I took and gave them a book bag. Come on like, for real. I'm on parole. So, the first thing I did was took off running and start going. I ran from them if I had did anything wrong. It's just common sense.

*** The only reason why I never, that I didn't get on the stand was because the lady [defense counsel] told me not to. That's the only reason why I didn't get on the stand.

The lady told me there's no reason for me to get on the stand because of the simple fact is nobody says that I did nothing. There's no evidence that said that I did nothing, which there's not.

You can look through that whole trial again, there's not really evidence.

What evidence? Some pictures. You've got some pictures of some property. And then you give this lady back the same stuff the same day. That don't even sound right.

\*\*\*

Come on, sir, it's like–there's a lot of stuff. That stuff was fabricated. And there is a lot of stuff that was and a lot that wasn't. There's a lot of stuff that I can prove that I didn't do it and I can't do, but I guess it's over now until the retrial or whatever.

\*\*\*

Then, they read off my [juvenile record]. Come on, that's a kid. You can't like– everything I did was 17 or younger. That was 17 or younger. That's a juvenile.

\*\*\*

\*\*\* We all been kids and we all make mistakes. Come on.

And when I was just home. I was going to King, finished started going to Kennedy King, doing this college stuff. I was going to take care of my daughter who's handicapped who was at home with a job at Wrigley Field.

When they locked me up, you could see that I had $750 in my pocket, so why would I break into a crib when I got $750 in my pocket?

And they tell me that I trying to make some money. But I got $750 in my pocket. That don't even sound right. That's why I should have just not listened to what she said and got on the stand. It was her that made me not do that stuff."

¶ 26    Prior to imposing sentence, the court conducted a *Krankel* inquiry as to defendant's claim that defense counsel had prevented him from testifying. See *People v. Krankel*, 102 Ill. 2d 181 (1984). As part of the inquiry and in response to the court's questions, defense counsel stated that

she had several conversations with defendant about testifying. Defense counsel told defendant that the decision was his to make and that if "he wished to get his story out, he would need to testify but that was his decision." Defense counsel explained that defendant told her he did not wish to testify. The court recalled that at the time of trial it had advised defendant of his right to testify and that he had to make that decision and that defendant stated he did not wish to testify.

¶ 27     The court sentenced defendant to 15 years' imprisonment. The court stated it had reviewed the PSI, and "considered the facts of the case, the factors in mitigation as laid out in the Criminal Code, as well as the presentation made by the Defense and the defendant in mitigation." The court explained that it had also considered the factors in aggravation, as well as the fact that defendant was "extendable" and eligible for a 4 to 30 year sentence. The court considered defendant's "extensive background" starting when he was a juvenile and, although defendant was young, his background was "significant." Even after being sentenced to nine years in prison for the two concurrent six-year sentences consecutive to the three-year sentence, this "didn't seem to persuade him to slow down." Instead, one month after defendant was released, he was "crawling through someone's window, robbing them of stuff, and apprehended with the proceeds shortly thereafter."

¶ 28     Defendant moved to reconsider his sentence, in part arguing his sentence "improperly penalized defendant for exercising his right to trial." The court denied the motion. In ruling, the court stated:

> "The Court did offer – after a conference way back in June 13, 2017 – 8 years in the Illinois Department of Corrections. The defendant refused that. He has a significant prior criminal background in terms of an armed robbery, and I believe at this time when he committed this offense he was on parole for felony.

As we tell people that do conferences, sometimes cases get better; sometimes cases get worse. And the Court at that time that made the offer of 8 years did not have the benefit of listening to the witnesses in the case, and the case becomes even more egregious in this instance after the Court listened to the victim.

The defendant, despite things that were alluded to in his personal life in the PSI, showed no are [*sic*] remorse whatsoever, basically that indicated that this was all wrong, that he was misrepresented, that he basically lied in terms of saying he was denied his right to testify when I recall clearly admonishing him in person and on the record.

So he has no remorse in terms of this instance specifically combined with his significant background. It was a very fair sentence. It was well within the parameters of 4 to 30 years in the Illinois Department of Corrections, and so the motion to reconsider sentence is denied."

¶ 29    As previously stated, on appeal, defendant argues the trial court abused its discretion in sentencing him to 15 years' imprisonment, where (1) the record did not support the court's finding that the case became "more egregious" after trial and (2) the court improperly relied on factors it fully considered during the Rule 402 conference when it offered defendant 8 years in prison. Defendant requests that we reduce his sentence or remand for resentencing.

¶ 30    A sentence should reflect both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I § 11; *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 48. A reviewing court may reduce the sentence imposed on a defendant by the trial court under Illinois Supreme Court Rule 615(b)(4) (eff Jan. 1, 1976). "That power, however,

should be exercised 'cautiously and sparingly.' " *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988).

¶ 31    Thus, a trial court's sentencing decision is reviewed under an abuse of discretion standard. *Id*. A reviewing court will find the trial court abused its discretion in sentencing a defendant where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id*. (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). A trial court has broad discretion in imposing a sentence, and its sentencing decisions are afforded great deference, because the trial judge "observed the defendant and the proceedings," and is in a better position to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id*. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *Stacey*, 193 Ill. 2d at 209). Nevertheless, we must interpret sentencing laws "in accord with common sense and reason" and not merely rubber stamp the trial court's judgment, so as to "avoid an absurd or unduly harsh sentence." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 1.

¶ 32    A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. In this case, defendant was convicted of Class 1 residential burglary (720 ILCS 5/19-3(a), (b) (West 2016)). Based upon his prior Class X armed robbery conviction (720 ILCS 5/18-2(a)(1), (b) (West 2012)), he was eligible for an extended sentence, with a sentencing range of 4 to 30 years' imprisonment. 730 ILCS 5/5-8-2 (West 2016); 730 ILCS 5/5-5-3.2(b)(1) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016) (the sentencing range for a Class 1 felony is 4 to 15 years; for an extended Class 1 felony, it is 15 to 30 years). Defendant's 15-year

sentence falls within these statutory guidelines and is, therefore, presumed to be proper. *Knox*, 2014 IL App. (1st) 120349, ¶ 46.

¶ 33    Although defendant's sentence falls within the sentencing range, he argues the trial court abused its discretion in sentencing him to 15 years' imprisonment, where it had previously offered defendant 8 years during the Rule 402 conference. Defendant contends nothing in the record supports the trial court's finding, during its ruling on the motion to reduce sentence, that the case became "more egregious" after hearing Tobias testify at trial, and the court did not articulate what made the case "more egregious." In this context, defendant also argues that the trial court did not give consideration to Tobias's statement during sentencing that reflected her desire that defendant be rehabilitated. Similarly, he argues the court had mitigating evidence to consider in his PSI, including his troubled childhood, mental health issues, and desire for and pursuit of an education.

¶ 34    To that last point, defendant's request that we consider the mitigating evidence in order to find the trial court abused its discretion is merely a request for this court to reweigh the evidence and substitute its judgment for that of the trial court. This we will not do. *Alexander*, 239 Ill. 2d at 213 (where the sentencing court adequately considered the appropriate factors, "the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed those factors differently"). The trial court is presumed to consider "all relevant factors and any mitigation evidence presented" (*People v. Jackson*, 2014 IL App (1st) 123258, ¶ 48), but has no obligation to recite and assign a value to each factor (*People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011)). Rather, where, as here, it is essentially argued that the court failed to take factors into consideration, the defendant "must make an affirmative showing that the sentencing court did not consider relevant factors." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38.

¶ 35    Defendant has not made any showing that the trial court failed to consider the mitigation evidence when sentencing defendant. The court specifically stated it reviewed and considered defendant's PSI, which reflected not only his criminal history, but also his family and mental health history. The court stated it considered the facts of the case, the mitigating and aggravating factors set out in the Criminal Code, and the arguments in aggravation and mitigation. While the court did not specifically mention Tobias's statement during its ruling, it had no obligation to recite and assign a value to that factor. *Perkins*, 408 Ill. App. 3d at 763. Defendant has not made any affirmative showing that the trial court did not properly consider this factor, along with the rest of the mitigating evidence, in sentencing him.

¶ 36    Turning to the crux of defendant's contentions, he asserts nothing in the record supported the trial court's finding that the case became "more egregious" after hearing the evidence presented at trial which could warrant a higher sentence than that offered in the plea hearing. He essentially argues that the trial court penalized him for choosing to exercise his right to stand trial. We disagree.

¶ 37    Where it is evident that the trial court imposed a sentence on a defendant because the defendant had refused to plead guilty, and instead availed himself of his constitutional right to a fair trial, the sentence will be set aside. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). "It is equally well established, however, that the mere fact that the defendant was given a greater sentence than that offered during plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding trial." *People v. Carroll*, 260 Ill. App. 3d 319, 349 (1992). Rather, it must be "clearly evident" that the trial court improperly imposed the sentence because defendant refused to plead guilty and proceed to trial. *Ward*, 113 Ill. 2d at 526.

We consider the entire record for evidence, which can come "when the trial court makes explicit remarks concerning the harsher sentence, or where the actual sentence is outrageously higher than the one offered during plea negotiations." *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26 (citations omitted).

¶ 38     Here, the record contains no evidence that the trial court imposed a 15-year sentence on defendant because he refused the court's 8-year plea offer and proceeded to trial. When the court addressed this argument in ruling on defendant's motion to reconsider sentence, it explained its reasoning for imposing a 15-year sentence on defendant. It stated the case became "more egregious" when it heard Tobias testify in court. While the facts Tobias testified to were consistent with the brief factual overview the State provided during the Rule 402 conference, the court had the benefit of hearing Tobias testify to the crime in significantly more detail. The court also had the benefit of seeing her demeanor while testifying, heard the steps defendant took to break into the house, and heard Tobias was "rattled" by the incursion into her home.

¶ 39     Further, at sentencing, the court heard defendant's allocution, which it did not hear during the plea conference. In explaining why it imposed a sentence greater than that offered during the plea conference, the court stated defendant showed no "remorse whatsoever," he claimed "he was misrepresented," and "he basically lied" when asserting his counsel prevented him from testifying. See *Ward*, 113 Ill. 2d at 529 ("[w]e note that this court has also held that lack of remorse and the defendant's failure to show a penitent spirit may properly be considered in determining sentences." (Internal citations omitted.)) In sum, the record contains no evidence that the trial court imposed a 15-year sentence upon defendant because he refused the plea offer. The court heard Tobias testify to the crime in more detail and heard defendant's allocution, where the court was able to consider

defendant's demeanor and version of events, and could properly conclude based on this additional evidence that a 15-year sentence was warranted.

¶ 40    Defendant also argues the court improperly relied on factors it had "fully considered" during the Rule 402 conference where it offered defendant eight years in prison. Specifically, defendant argues that, during sentencing, the court "improperly took double inventory" of the armed robbery in his criminal background and the fact that he committed the instant offense when on parole, all of which it had already learned during the Rule 402 conference. Defendant argues, "[i]t does not make sense" that, in ruling on the motion to reconsider sentence, the trial court would attribute the higher sentence to these factors.

¶ 41    During its ruling on the motion to reconsider sentence, the court did note defendant had a "significant" criminal background "in terms of an armed robbery" and was on parole at the time of the burglary. It then went on to say that the case became "more egregious" after listening to the witnesses testify, and hearing defendant's lack of remorse and lie to the court. Noting defendant's lack of remorse "combined with his significant [criminal] background," the court stated the 15-year sentence was "very fair." However, there is absolutely no basis to claim that, as defendant implies here, merely because the court considered defendant's criminal background in making the plea offer, it somehow could not consider this same information at sentencing, especially in the context of what it learned regarding defendant's full criminal background and heard defendant's claims in allocution.

¶ 42    As is well settled by our Supreme Court, a trial court may offer a defendant a dispositional concession for pleading guilty. See *People v. Moss*, 205 Ill. 2d 139, 171 (2001); *Ward*, 113 Ill. 2d at 526. Defendant rejected the sentence the court offered in order to induce him to accept the plea,

and thus chose not to take advantage of that inducement. See *People v. Brown*, 2018 IL App (1st) 160924, ¶ 15. The mere fact that the court imposed a greater sentence than that offered in the plea deal does not support an inference that it was imposed as punishment for defendant going to trial. As this court has previously held, a sentence over twice that of a proposed plea bargain is not outrageously higher for the purpose of demonstrating that the trial court improperly imposed the sentence. *See, e.g.*, *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 27 (holding a fifteen-year sentence was not outrageously disproportionate to defendant's refused plea offer of seven years' imprisonment). Given defendants may receive a concession for pleading guilty, it is not "outrageously disproportionate" that defendant received an initial plea offer of 8 years' imprisonment, but was sentenced to 15 years after the court heard all the evidence at trial and sentencing.

¶ 43    In sum, we find defendant's sentence properly reflected the facts of his case and his extensive criminal history which, as the trial court noted, "didn't seem to persuade him to slow down." See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13 (criminal history alone may warrant a sentence substantially above the minimum). Nothing in the record demonstrates "clearly" (*Ward*, 113 Ill. 2d at 526) that the court held his choice to go to trial against him. Therefore, it is not "clearly evident" that the court abused its discretion in imposing a 15-year prison sentence for residential burglary, almost twice as high as the plea offer, where it properly considered the factors in aggravation and mitigation, and the record does not show the court imposed the sentence as punishment for defendant exercising his right to trial. See *Brown*, 2018 IL App (1st) 160924, ¶ 15. For the foregoing reasons, we affirm the judgment of the trial court.

¶ 44    Affirmed.